**GALERIE FURSTENBERG, Plaintiff,**

v.

**Philip COFFARO, individually, and in his capacity as an officer, agent and/or director of C.V.M. Art Company, Ltd., Gallery 25 Ltd., Heritage Graphics, Inc. and/or d/b/a Combined Graphics, Thomas Wallace, individually, and in his capacity as an officer, agent and/or director of Geneva Graphics Limited and/or International Fine Arts Ltd. and/or as an agent of C.V.M. Art Company, Ltd., Carol Convertine, individually, and in her capacity as an officer, agent and/or director of Convertine Fine Art Ltd., Julien Aime, Andrew Levine, individually, and in his capacity as an officer, agent and/or director of A.D.L. Fine Arts Inc. and/or d/b/a Combined Graphics, T.R. Rogers, a/k/a Tom Reed, a/k/a Reed Rogers, individually, and in his capacity as an officer, agent and/or director of T.R. Rogers Inc. and/or Rogers on Rodeo Inc., Melton Magidson, individually, and in his capacity as an officer, agent and/or director of Magidson & Associates, Inc., Defendants.**

No. 88 Civ. 355 (LLS).

United States District Court, S.D. New York.

Oct. 5, 1988.

As Amended Nov. 14, 1988.

Thomas Ré & Partners, New York City (Alan A. Beaven, of counsel), for plaintiff.

Rosan & Rosan, P.C., New York City (Robert Rosan, of counsel), for defendant Melton Magidson.

Arnold J. Ross, New York City, for defendant Philip Coffaro.

Capetola & Doddato, New York City (Frank A. Doddato, of counsel), for defendants Thomas Wallace and Andrew Levine.

Hans J. Hachmann, New York City, for defendant Julien Aime.

Berger & Steingut, New York City, (Robert Weiner, of counsel), David Paul Steiner,

Los Angeles, Cal., for defendant T.R. Rogers.

## OPINION and ORDER

STANTON, District Judge.

Galerie Furstenberg is a French corporation which sells works of art and purportedly holds the exclusive rights to certain drawings and etchings by Salvador Felipe Jacinto Dali. It alleges that defendants (art merchants and retail outlets) advertised, distributed and sold counterfeit Dali reproductions since December 1980. Plaintiff sues under RICO, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1982 & Supp. IV 1986), alleging predicate act violations of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 (1982), and the federal trademark laws, 15 U.S.C. §§ 1111–27 (1982), and also alleges state law claims.

Defendants move pursuant to Fed.R.Civ. P. 9(b) and 12(b)(6) to dismiss the complaint, and pursuant to Local Rule 39 for security for costs. Defendant Rogers also moves, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the complaint for lack of personal jurisdiction over him. Plaintiff moves for judgment against defendant Convertine Fine Art, Ltd.

For the reasons stated below, defendants' motion to dismiss is denied in part and granted in part; plaintiff's motion for entry of judgment against Convertine Fine Art, Ltd. is denied; and the determination of defendants' motion for security is held in abeyance pending further submissions.

## BACKGROUND

Galerie Furstenberg "has long been a specialist in the publication and sale of early editions of Dali's works" and "is the foremost publisher of Dali copper etchings in the world." (Complaint ¶ 10) Its names six defendants [1] in this action: Philip Coffaro (president and majority shareholder of C.V.M. Art Company, Gallery 25 Ltd., and Heritage Graphics, Inc., doing business as Combined Graphics), Thomas Wallace (a salesman for C.V.M. Art Company and majority shareholder of International Fine Arts Ltd. and Geneva Graphics Limited), Julien Aime (who is claimed to have provided fraudulent certificates of authenticity), Andrew Levine (a shareholder of A.D.L. Fine Arts Inc., doing business as Combined Graphics), T.R. Rogers (president and majority shareholder of T.R. Rogers Inc. and Rogers on Rodeo Inc.), and Melton Magidson (president and majority shareholder of Magidson & Associates, Inc.). (*Id.*, ¶¶ 11–17, 26)

Taking as true Galerie Furstenberg's allegations, defendants created counterfeit versions of Dali's artwork by (1) reproducing a Dali work so it would appear to have an authorship it lacks, (2) printing the photograph of an authentic work and then reproducing it by photomechanical means, or (3) engraving an existing Dali subject on a copper plate and reproducing it in multiple form. The complaint identifies eight Dali drawings or etchings which defendants illicitly reproduced and to which Galerie Furstenberg allegedly has exclusive rights. (It also has possession of two of the originals):

1. "The Fisherman" or "Le Pecheur"
2. "Pegasus" or "Pegase"
3. "La Femme, Le Cheval et La Mort" which defendants sold as "Chevalier Du Mort"
4. "Femme a La Fontaine" which defendants sold as "The Fountain of Destiny"
5. "Frontispiece" which defendants sold as "Lover and Don Quixote"
6. "Apollinaire"
7. "Le Nu a La Jarretiere" which defendants sold as "Dancing Maidens" and "Dancing Rose"
8. "Femmes Poules" which defendants sold as "Gala"

Summarizing the complaint, once the counterfeits were made defendants solic-

---

**1.** Although Carol Convertine (president and majority shareholder of Convertine Fine Art, Ltd.) is also named as a defendant, she has confessed judgment and does not join in this motion.

Defendant Rogers is not named in plaintiff's eighth and ninth claims.

ited customers by telephone and direct mailings, misrepresenting Dali's involvement in the works, their investment value, their ability to be resold, and defendants' willingness to provide a refund if their authenticity were questioned. Defendants also issued fraudulent certificates or guarantees of authenticity of the works. Defendants' sale of these counterfeit reproductions to unsuspecting art investors earned them a $32.5 million profit.

Galerie Furstenberg contends that defendants' actions unjustly enriched them and constitute fraud, as well as violations of the RICO and federal trademark statutes and New York laws against misrepresentation, unfair competition, and deceptive advertising. As relief, plaintiff seeks nearly $100 million in treble damages on its RICO claims, $32.5 million on its state law claims, $15 million in punitive damages, and injunctive relief.

## DISCUSSION

I. Claim One: Section 1962(c) of RICO

Galerie Furstenberg's first claim is for violations of § 1962(c) of RICO. Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

To plead a violation of § 1962(c) a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co. 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). Section 1964(c) of RICO allows for civil enforcement of its provisions:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in an appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Defendants argue that Galerie Furstenberg does not have standing to sue under RICO. In addition, defendants contend that Galerie Furstenberg has failed to satisfy this circuit's pleading requirements of a RICO enterprise and has failed to allege with particularity the mail and wire fraud predicate act violations.

A. Standing

■ Defendants argue that the requirement that "the racketeering activities injure the plaintiff in his business or property," Sedima, 473 U.S. at 495, 105 S.Ct. at 3284, precludes Galerie Furstenberg's RICO claim. "Unless plaintiff can demonstrate that it has been injured by the predicate acts of mail and wire fraud, which constitute the alleged pattern of racketeering activity [distributing, advertising, offering for sale, and selling counterfeit artwork], it cannot recover under RICO." (Defendants' Memorandum, p. 10) They urge that those who bought the counterfeit artwork are the only possible victims of the mail and wire fraud violations.

A recent decision of the Second Circuit, Sperber v. Boesky, 849 F.2d 60 (2d Cir. 1988), suggests otherwise. In Sperber the court addressed the question "to what extent are damages caused only indirectly by the predicate acts recoverable? (By damages caused only 'indirectly,' we mean 'racketeering' injury, 'competitive' injury or injury caused by the total effect of the pattern of racketeering in the enterprise.)" Id. at 63. In answering this question the court looked to Justice Marshall's examples, in his Sedima dissent, of plaintiffs who could recover: the targets of the racketeering enterprise, its competitors, and the racketeer's customers. Because the Sperber plaintiffs, who were purchasers of common stock of six companies, contended they had been injured because Boesky's reputation and unlawful activities—none of which otherwise affected the six companies—had inflated stock prices in general, they met none of these definitions and their injury was too remote to recover.

By contrast, here Galerie Furstenberg was a direct competitor of defendants. As such, it alleges that defendants' sale of counterfeit Dalis "deprived plaintiff of its rightful ownership of, and interest in, its property rights and/or the exclusive rights granted to plaintiff by Dali, and of the opportunity to earn profits from the exercise of those rights" as well as "injured, undermined, and compromised plaintiff's professional reputation in the art community." (Complaint, ¶ 31) This alleged injury is cognizable under RICO. *See Sperber v. Boesky,* 849 F.2d at 63 (recognizing Congress's concern for the "competitors and investors whose businesses and interests were harmed ... or whose competitive positions decline because of infiltration in the relevant market") (quoting *Sedima,* 473 U.S. at 519, 105 S.Ct. at 3301 (Marshall, J., dissenting)).

## B. RICO Enterprise Requirement

■ Defendants next contend that plaintiff fails properly to plead a RICO enterprise (Defendants' Memorandum, p. 21):

> [D]efendants are left with the difficult, if not impossible, task of determining what this alleged enterprise actually is, who its principals are, what plaintiff claims it does, and what each defendants' [sic] purported role in that enterprise may be.

Section 1961(4) includes as an enterprise "any individual, partnership, corporation, association, or other legal entity, and any union or group associated in fact although not a legal entity." The RICO enterprise is defined as "a group of persons associated together for a common purpose of engaging in a course of conduct" and "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981).

The complaint alleges that "defendants purchased, for distribution and sale, and have been continuously distributing, advertising, offering for sale and/or selling ... forged or counterfeited" Dalis and lists three "examples of distribution arrange-

ments concluded between defendants," specifying dates, amounts of money, and individual defendants (Complaint, ¶ 20), and that "Aime provided fraudulent certificates of authenticity for the criminal enterprise, and defendants Andrew Levine, T.R. Rogers, Carol Convertine, and Melton Magidson, *inter alia,* operated the retail outlets" (*Id.,* ¶ 26), details defendants' misrepresentations (*Id.,* ¶ 21), lists examples of fraudulent authentications, identifying the date, subject and maker thereof (*Id.*), explains the ways in which defendants produced the counterfeit works (*Id.,* ¶ 22), identifies the counterfeit works, the dates during which each was sold, and the amount charged for each (*Id.,* ¶ 28), and lists sales between defendants (*Id.,* ¶ 25). These allegations sufficiently portray a "group associated for a common purpose."

■ In a footnote defendants further contend that Galerie Furstenberg has not distinguished between the enterprise and the persons conducting the affairs of the enterprise. (Defendants' Memorandum, p. 22 n. *) In *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), the Second Circuit held "that under section 1962(c) a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity."

The enterprise alleged here, however, is not an "individual, partnership, corporation, association, or other legal entity," 18 U.S.C. § 1961(4), but rather a "group associated in fact although not a legal entity." *Id.* Where "[t]he enterprise alleged is an association in fact of a group of ... individuals, while the persons to be held liable are the individual defendants who participated in the association by committing predicate acts which related to and furthered the association's purported common purpose," the person and the enterprise are not the same. *In Re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 517–18 (S.D.N.Y.1987). *See also, In Re Energy Systems Equipment Leasing Securities Litigation,* 642 F.Supp. 718, 740, 741 (E.D.

N.Y.1986) ("enterprise composed of an association-in-fact, even if made up entirely of individual defendants deemed to be § 1961(3) 'persons,' is to be viewed for purposes of RICO claims as possessing a separate existence from its individual members ... the various defendants constitute persons under RICO, while the interaction and relationship between these defendants with regard to the alleged scheme ... comprises an association-in-fact enterprise separate and distinct from those individual persons"); *Fustok v. Conticommodity Services, Inc.,* 618 F.Supp. 1074, 1076 (S.D.N.Y. 1985) ("association in fact which constitutes a RICO enterprise is not merely a synonym for the collection of 'individuals' which form the association, but instead it is a distinct entity").

Galerie Furstenberg, therefore, has sufficiently alleged a RICO enterprise.

### C. Mail and Wire Fraud Violations

■ To plead the predicate offenses of mail and wire fraud, a plaintiff must allege: " '(1) a scheme to defraud, and (2) the use of the mails or interstate wires in furtherance of the fraudulent scheme.' " *In Re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. at 512 (quoting *Tryco Trucking Co. v. Belk Stores Services, Inc.,* 634 F.Supp. 1327, 1333 (W.D.N.C.1986)). Under Fed.R.Civ.P. 9(b), which requires that "the circumstances constituting fraud or mistake shall be stated with particularity," a plaintiff must specify the time, place, speaker, and content of the alleged misrepresentation. *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986).

■ The complaint identifies as misrepresentations Dali's "involvement" in the counterfeit artwork, the designation of the artwork's origin, the investment value of the artwork, the existence of a resale market, the authenticity of the artwork, the "willingness" of defendants to provide refunds (Complaint, ¶ 21), and asserts that these misrepresentations were made on the artwork itself, on the certificates of authenticity, in 250,000 direct mailings per month, and in other sales materials. Elsewhere, the complaint sets out the time periods during which each counterfeit work was sold. (*Id.,* ¶ 28) Although plaintiff does not always specify the "speaker" of the misrepresentation, the complaint alleges that all defendants conspired together to perpetrate the fraud. "In light of [their] intimate involvement in the formation and operation of the [counterfeit Dali market], we think the complaint sufficient despite its failure to pinpoint which among the [six] of them was the speaker or the mailer on any given occasion." *Vereins–Und Westbank AG v. Carter,* 639 F.Supp. 620, 623 (S.D.N.Y.1986).

Accordingly, defendants' motion with respect to plaintiff's first claim is denied.

### II. Claim Two: Section 1962(a) of RICO

■ RICO's section 1962(a), otherwise known as the "money laundering" prohibition, prohibits the use of proceeds obtained through a pattern of racketeering activity to acquire, maintain or control an enterprise. Galerie Furstenberg contends that it has been injured by defendants' "reinvestment of their ill-begotten proceeds" because such reinvestment "enables defendants to continue to pursue the venal objectives for their racketeering injuries." (Plaintiff's Memorandum, p. 25)

In *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F.Supp. 1532, 1537 (D.Mass.1986), the court explained "that § 1962(a) provides a cause of action only for injuries arising from the actual use or investment of racketeering income, and not for injuries arising from the underlying racketeering activity." In *De Muro v. E.F. Hutton,* 643 F. Supp. 63, 67 (S.D.N.Y.1986), the court rejected the plaintiffs' claim that they were injured by defendants' use of racketeering proceeds to further their operations, "thereby permitting the continued defrauding of plaintiffs.... The contention that paying brokers' commissions and financing the operation of an office is sufficient to state a cause of action under 18 U.S.C. § 1962(a) would turn every churning case into a RICO case." *Id.*

Similarly, Galerie Furstenberg has not been injured by defendants' investments,

but rather by defendants' racketeering activity. Even if the funds invested in the enterprise from previous sales of counterfeit Dalis enabled defendants to pursue their racketeering activities with enhanced vigor, the injury Galerie Furstenberg allegedly suffered was still caused by the production and sale of counterfeit artwork, not the investment itself.

Accordingly, plaintiff's second claim is dismissed.

## III. Claim Three: Section 1962(d) of RICO

■ Section 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." Since defendants' motion to dismiss plaintiff's § 1962(c) claim is denied, the motion to dismiss the third claim is also denied.

## IV. Fourth Claim: Punitive Damages

■ Defendants argue that because RICO contains a treble damages provision, punitive damages are not available. Galerie Furstenberg contends that RICO damages are compensatory in nature and that punitive damages, where appropriate, should be awarded.

In support of its position, Galerie Furstenberg cites *Banderas v. Banco Central del Ecuador*, 461 So.2d 265 (Fla.Dist.Ct. App.1985). That case was brought under the Florida RICO statute, Fla.Stat. §§ 895.-01–895.06 (1981), which is "nearly identical to the federal RICO statute." *Banderas*, 461 So.2d at 269. Unlike the federal RICO statute, however, Florida's contains an explicit provision for punitive damages: "Punitive damages, which are permitted in section 895.05(7), are appropriate where fraudulent conduct is accompanied by malice, moral turpitude, wantonness, willfulness, or reckless indifference to the rights of others." *Id.* at 272.

Since Galerie Furstenberg sues here under the federal RICO laws, whose plain language do not allow for punitive damages, and has not shown that Congress intended such damages to be available under RICO, the fourth claim is dismissed. *See Getty Petroleum Corp. v. Bartco Pe-*

*troleum Corp.*, 858 F.2d 103, 112 (2d Cir. 1988) (punitive damages not available under § 35 of the Lanham Act because "to imply a punitive damages award for trademark infringement would inappropriately add a remedy Congress could have—but did not—include in its intricate and comprehensive recovery scheme").

## V. Fifth Claim: Trademark

■ Plaintiff's fifth claim states that defendants have violated its "trademark and/or trade dress rights for all subjects created by Dali which are the property of plaintiff." (Complaint, ¶ 49, 51) Although not identified as such, this claim appears to be for violation of the false designation of origin statute, 15 U.S.C. § 1125 (1982), which provides that

> [a]ny person who shall affix, apply or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used, shall be liable to a civil action ...

Galerie Furstenberg alleges that defendants are infringing Furstenberg's trademark which

> consists of the particular lines, unique figural constellation, colors, stylistic features and design of a certain subject in an image created by Dali and lawfully owned by plaintiff. Each one of those unique and distinctive images constitutes a valid trademark. The trademark is the image or the configuration of the drawing as applied to paper. The art purchasing public identifies drawings exhibiting those distinguishing images as works created by Dali. Thus, it is not Dali's signature that sets his artwork apart from similar creations by other artists, but rather his unique style and interpre-

tation of a certain subject as expressed on paper. (Plaintiff's Memorandum, p. 40) (citation omitted)

It argues that the expanded definition of "trademark," 15 U.S.C. § 1127, which

includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify and distinguish his goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown

is broad enough to encompass "its trademark-protected 'unique' works of fine art acquired from Dali." (Plaintiff's Memorandum, p. 39). And, "[d]ue to the 'inherent distinctiveness' of the image of original Dali artwork, the level of trademark protection in this case is properly characterized as 'arbitrary or fanciful'" so plaintiff need not prove secondary meaning. (*Id.*, p. 40–41)

That argument, as defendants correctly state, "endeavors to enforce what is at best a copyright claim through the mechanism of trademark protection." (Defendants' Memorandum, p. 30) 17 U.S.C. § 102(a) provides:

Subject matter of copyright: In general
  (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

  .   .   .   .   .

  (5) pictorial, graphic, and sculptural works ...

Plaintiff seeks to protect Dali's "unique style and interpretation of a certain subject" (i.e., his authorship) "as expressed on paper" (i.e., fixed in any tangible medium of expression). This claim is properly brought under the federal copyright, not trademark, statute.

Accordingly, plaintiff's fifth claim is dismissed.

## VI. Preemption: Sixth Claim for Misappropriation and Seventh Claim for Unjust Enrichment

■ Galerie Furstenberg alleges that "defendants have maliciously misappropriated, for their sole benefit and profit, plaintiff's property rights and benefits deriving therefrom, by false and/or misleading statements...." (Complaint, ¶ 60).

Defendants contend that Galerie Furstenberg's sixth and seventh claims are preempted by the federal copyright laws. 17 U.S.C. § 301(a) provides:

On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

In *Universal City Studios, Inc. v. T–Shirt Gallery, Ltd.*, 634 F.Supp. 1468, 1474–75 (S.D.N.Y.1986), the court explained the requirements for preemption:

Under 17 U.S.C. § 301 (1982), a state law claim is preempted by the federal copyright laws if two conditions are satisfied: (1) the subject matter of the work in which the state law rights are asserted comes within the subject matter of the copyright laws; and (2) the state law rights asserted in the work are equivalent to the exclusive rights protected by federal copyright laws.

The first is met here because federal copyright subject matter covers "pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5). The second poses the question "does the conduct which constitutes 'misappropriation' require any element other than the mere act of reproduction, distribution, performance or display?" 1 M. Nimmer, Nimmer on Copyright, § 1.01[B], 1–17

(1987). Where "misappropriation is but another label for reproduction, ... [it] is a right 'within the general scope of copyright' under Section 301(a)." *Id.* *See Universal City Studios, Inc.*, 634 F.Supp. 1468; *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523 (S.D.N.Y.1985); *Walker v. Time Life Films, Inc.*, 615 F.Supp. 430, 441 (S.D.N.Y.1985) (since "plaintiff's unfair competition claim seeks protection against copying, it is also based on a right equivalent to rights within the scope of the [Copyright] Act and defeated by 17 U.S.C. § 301(a)"), *aff'd*, 784 F.2d 44 (2d Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986).

Even if Galerie Furstenberg's sixth claim is based upon the New York state law of unfair competition which "requires unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor and talent," rather than the "misappropriation form of unfair competition," it is still preempted under the federal copyright law. 1 Nimmer, § 1.01[B], 1–21.[2]

Accordingly, plaintiff's sixth and seventh claims are dismissed.

## VII. Eighth Claim: Dilution

■ Galerie Furstenberg alleges that "Defendants, through their sale of their counterfeit works, have diluted the distinctiveness and reputation of plaintiff's trademarks, and have substantially diminished the value of such trademark." (Complaint, ¶ 72)

N.Y. Gen.Bus.Law § 368–d (McKinney 1984) provides:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Galerie Furstenberg's claim under this statute must fail. "To merit § 368–d protection a plaintiff must first possess a trademark or name which is 'truly of *distinctive quality*' or one which has 'acquired a secondary meaning in the mind of the public.'" *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir.1983) (quoting *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 546, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977), emphasis in original); accord *Warner Brothers, Inc. v. American Broadcasting Cos., Inc.*, 720 F.2d 231 (2d Cir. 1983). As discussed above, Galerie Furstenberg does not have a trademark in the Dali etchings and drawings.

Accordingly, plaintiff's claim for dilution is dismissed.

## VIII. Ninth Claim: False Advertising

■ Galerie Furstenberg's ninth claim states (Complaint, ¶ 80):

Defendants failed to disclose material facts in making the above-mentioned representations in their advertisements promoting the sale of single works of fine art and multiples, in violation of N.Y. Gen.Bus.Law § 350 (McKinney 1968) [sic] and N.Y.C. Consumer Protection Law §§ 20–700 to 706 (1985).

Section 350 of N.Y.Gen.Bus.Law (McKinney 1988) proscribes false advertising. To make out a claim under section 350 "a plaintiff is only required to demonstrate that the advertisement was misleading in a material respect and he was injured, while an injured person has been defined as one who was misled or deceived by such an advertisement." *McDonald v. North Shore Yacht Sales, Inc.*, 134 Misc.2d 910, 513 N.Y.S.2d 590, 593 (1987). Defendants contend that Galerie Furstenberg was not misled or deceived by their advertisements, and is therefore not an injured person who has standing to sue for false advertising. Although Galerie Furstenberg does not allege injury to itself or the general public in

**2.** "For similar reasons a state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence preempted insofar as it applies to copyright subject matter." *Id.*

its complaint[3], it now argues that it has been injured by defendants' attempts "to bilk unsuspecting art purchasers by means of counterfeiting activities" which have caused "consumer insecurity as to the genuineness of all Dali drawings." (Plaintiff's Memorandum, p. 53)

Competitors, as well as consumers, are given the right to sue under N.Y.Gen. Bus.Law § 350–d. "[T]he purpose of the private rights of action was to permit 'private enforcement' against 'injuries resulting from consumer fraud....' [D]irect deception against ordinary consumers, where the chief injury is to the consumer rather than competitors, would appear clearly within the scope of GBL §§ 349–350."[4] Practice Commentary to Article 22–A, Consumer Protection from Deceptive Acts and Practices, p. 566, 569. *Id.* at 572.

However, a competitor's right to sue depends "on the *nature* of the primary injury —i.e., to the public or consumers, including to a business in the role of consumer...." (emphasis in original). For that reason

> [T]rademark or "trade dress" infringement claims or commercial disputes involving individually negotiated contracts ... fall outside the original intent of §§ 349 and 350....
>
> Allowing use of GBL §§ 349–350 in such trade identification cases would bring the "one-way" prevailing *plaintiff* attorney's fee provisions of § 349(h) and § 350–d to bear in a context totally different from that originally contemplated.

*Id.* at 567, 570 (emphasis in original).

Since the gist of Galerie Furstenberg's claim is that, as defendants' competitor, it was injured by defendants' wrongful reproduction of artwork for which it holds exclusive licenses, it may not recover under section 350.

With respect to the City of New York's Consumer Protection Law (Admin. Code, Chap. 5, Subchap. 1 §§ 20–700–04), defendants argue and plaintiff does not contest, that only the Commissioner of Consumer Affairs ("Commissioner") is empowered to enforce those provisions cited in Galerie Furstenberg's ninth claim. Since this is a correct reading of those provisions[5], plaintiff's ninth claim is dismissed.

## IX. N.Y.Bus.Corp.Law § 1312

■ As their final argument[6], defendants posit that "because the art market in the United States is centered in New York, it may be presumed that plaintiff is conducting regular business in and from this State." (Defendants' Memorandum, P. 45–46) Since Galerie Furstenberg has not alleged that it is qualified to do business in New York, defendants contend that it is prohibited from bringing suit under N.Y. Bus.Corp.Law § 1312(a) (McKinney 1986). That law provides:

> A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this state without authority.

In response, the director of Galerie Furstenberg asserts that plaintiff's "activities in the United States solely and exclusively

---

3. Galerie Furstenberg simply alleges that "[a]s a result of defendants' unlawful conduct, plaintiff is entitled to compensatory damages, pre-judgment interest and attorneys' fees in bringing this action." (Complaint, ¶ 81).

4. Section 349 prohibits deceptive acts and practices and is section 350's companion.

5. Sections 20–703 and 20–704 of the law provide that upon certain findings by the Commissioner, either the city may bring an action or the Commissioner may settle with the violator after receiving "written assurance" that the deceptive .

practices will cease. The Commissioner then notifies potential claimants (consumers) of the creation of an account for restitution.

6. Defendant Rogers also argues that because he is a California resident with no contacts to New York, this court lacks jurisdiction over him. Since his argument presumes dismissal of plaintiff's RICO claims, it must fail. *See Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1055 (S.D.N.Y.1987) (since RICO authorizes nationwide service of process, due process only requires that defendant have minimum contacts with United States).

involve interstate commerce." (Affidavit of Christophe Argillet, sworn to May 28, 1988, ¶ 1)

*Netherlands Shipmortgage Corp. v. Madias*, 717 F.2d 731, 738, 739 (2d Cir.1983), explains the application of section 1312(a):

> [F]oreign corporations may engage in a variety of business activities in New York without complying with its qualification statute.... [I]n the absence of evidence of ongoing intrastate business activity, the inference that a foreign corporation is doing business in New York must be based on evidence of substantial and permanent or continuous business activity in the state, *i.e.*, evidence that the corporation has localized some portion of its business activity in New York.

In light of defendants' failure to supply any evidence demonstrating that Galerie Furstenberg has localized its business activity in New York, they may not successfully argue that section 1312(a) bars plaintiff's suit.

## X. Security for Costs

■■■ Defendants seek an order requiring Galerie Furstenberg "to file an original bond for costs or additional security for costs," pursuant to Civil Rule 39 of the Local Rules of the Southern and Eastern Districts of New York, in the amount of $150,000. Defendants argue it is well within this court's discretion to order plaintiff to post a bond because: (1) the complaint is based solely on information and belief; (2) Galerie Furstenberg is a foreign corporation and N.Y.C.P.L.R. § 8501(a) (McKinney 1987) permits security for costs as of right when a plaintiff is not a domestic corporation; and (3) the scope of the complaint's allegations and the international scope of the art market will require extensive and, therefore, expensive discovery.

Galerie Furstenberg contends that not only would such an order would go against

RICO's purposes, the strong evidence of wrongdoing provided by various criminal prosecutions against those who have allegedly marketed counterfeit Dalis should lead this court to "actively encourage plaintiff's efforts to bring defendants' 'art mafia' to an end." (Plaintiff's Memorandum, p. 67)

Local Rule 39 "assures that a defendant who is sued will, if successful, at least be able to recoup its costs," *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 631 F.Supp. 335, 352 (S.D.N.Y.1986) (ordering a $10,000 bond where plaintiff was a debtor with no liquid assets), *aff'd*, 818 F.2d 240 (2d Cir. 1987). Although this court is not bound by N.Y.C.P.L.R. § 8501 in diversity suits, it may look to it for guidance. *Id.*, 818 F.2d at 251.

The circumstances here suggest that defendants' application should be granted. Galerie Furstenberg is a French corporation, and no evidence of bank accounts or property holdings in this country has been presented. Before their application will be granted, however, defendants are directed to file affidavits specifying (1) why, should they prevail, "collection of costs would likely prove difficult," *Knight v. H.E. Yerkes and Associates, Inc.*, 675 F.Supp. 139, 142 (S.D.N.Y.1987) (ordering a $15,000 bond where plaintiff was a resident of Thailand who had incurred substantial expenses, and depositions were to occur out of the country) and (2) which costs (not to include attorneys' fees) would be protected by the bond. *Cresswell v. Prudential–Bache Securities, Inc.*, No. 83 Civ. 2099 (RWS) (Apr. 28, 1987) [available on WESTLAW, 1987 WL 4824] (ordering a $3,000 bond where plaintiff was a resident of Italy and defendant specified costs to be protected).

## XI. Judgment against Convertine Fine Art, Ltd.

■■■ Pursuant to N.Y.C.P.L.R. § 3218 [7] defendant Carol Convertine (president of

---

7. Section 3218 provides, in relevant part,

... a judgment by confession may be entered, without an action, either for money due or to become due, or to secure the plaintiff against a contingent liability in behalf of the defendant, or both, upon an affidavit executed by the defendant;

1. stating the sum for which judgment may be entered, authorizing the entry of judgment, and stating the county where the defendant resides or, if he is a non-resident, the county in which entry is authorized;

2. if the judgment to be confessed is for money due or to become due, stating concise-

Convertine Fine Art, Ltd.) executed an affidavit on February 5, 1988 and a Confession of Judgment on behalf of Convertine Fine Art, Ltd. ("Convertine") in the amount of $145,000,000 on February 19, 1988. Based upon these two documents and presumably pursuant to Fed.R.Civ.P. 54(b), Galerie Furstenberg seeks entry of judgment against Convertine for $145,000,000 and an order enjoining Convertine and those under its control from engaging in the advertisement, sale, or production of counterfeit Dalis.

"Section 3218 is intended to protect creditors of a defendant from judgments entered on confession by collusion." *Giryluk v. Giryluk,* 30 A.D.2d 22, 289 N.Y.S.2d 458, 460 (1968), *aff'd,* 23 N.Y.2d 894, 298 N.Y.S.2d 91, 245 N.E.2d 818 (1969). *See also, Mittman v. Mittman,* 33 A.D.2d 573, 305 N.Y.S.2d 519 (1969) (remanding for evidentiary hearing motion by creditor to vacate debtor's confession of judgment on the ground that judgment was in fraud of creditors). Although not Convertine's creditors, defendants contend that plaintiff's application presents "serious issues of credibility and legitimacy" and they request the opportunity to conduct Ms. Convertine's deposition to discover the circumstances surrounding execution of the two documents. (Affidavit of Robert R. Rosan, sworn to June 16, 1988, ¶ 7, 8).

Since (1) plaintiff fails to demonstrate that there is no just reason for delay, Fed. R.Civ.P. 54(b), (2) defendants argue that Galerie Furstenberg and Convertine have colluded in this application, and (3) "injunctive relief is not available under civil RICO," *Religious Technology Center v. Wollersheim,* 796 F.2d 1076, 1087–88 (9th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987), Galerie Furstenberg's application is denied at this time. Defendants may take Ms. Convertine's deposition.

ly the facts out of which the debt arose and showing that the sum confessed is justly due or to become due; and

3. if the judgment to be confessed is for the purpose of securing the plaintiff against a

## CONCLUSION

Defendants' motion to dismiss the complaint is denied with respect to plaintiff's first and third claims, and granted with respect to the second, fourth, fifth, sixth, seventh, eighth, and ninth claims. Defendant Rogers' motion to dismiss for lack of jurisdiction is denied. Plaintiff's motion for entry of judgment against Convertine Fine Art, Ltd. is denied. Defendants' motion for security for costs is held in abeyance pending further submissions.

Plaintiff shall have thirty days from the date of this order to amend its complaint to add any claims it may have under the federal Copyright Act, 17 U.S.C. § 101 *et seq.*

A pretrial conference in this case will be held on Friday, November 4, 1988, at 11:00 a.m. At that conference, plaintiff's suggestion that "[i]t may be ... that the most appropriate course of action in this case is for the Court to refer the entire matter to the Attorney General of the State of New York or the United Postal Inspection Service," (Plaintiff's Memorandum, p. 54), will be discussed. In addition, counsel should be prepared to make commitments concerning the setting of the case for trial and the topics set forth in Fed.R.Civ.P. 16.

contingent liability, stating concisely the facts constituting the liability and showing that the sum confessed does not exceed the amount of the liability.