**Isabel SPERBER and Aline K. Halye, Plaintiffs–Appellants,**

v.

**Ivan F. BOESKY, Defendant–Appellee.**

**No. 903, Docket 87–9030.**

United States Court of Appeals, Second Circuit.

Argued March 22, 1988.

Decided June 3, 1988.

Richard B. Dannenberg, New York City (Lowey, Dannenberg & Knapp, P.C., David C. Harrison, of counsel), for plaintiffs-appellants.

Charles E. Davidow, Washington, D.C. (Wilmer Cutler & Pickering, Robert B. McCaw; Hertzog, Calamari & Gleason, New York City, Peter E. Calamari, William Simon, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, CARDAMONE and PIERCE, Circuit Judges.

FEINBERG, Chief Judge:

Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO) provides that a civil RICO plaintiff can recover only damages suffered "by reason of a violation of section 1962" of Title 18, the "Prohibited activities" section of RICO. This case requires us to construe that statutory language. Appellants, plaintiffs below, claim they were injured when the market price of six "takeover stocks" dropped following the announcement by the Securities and Exchange Commission (SEC) that Ivan F. Boesky had been involved in widespread insider trading and other illegality. The district court, Gerard L. Goettel, J., dismissed the complaint for failure to state a claim on which relief could be granted, Fed.R.Civ.P. 12(b)(6), because it found that plaintiffs' injuries were not proximately caused by defendant's racketeering violations. *Sperber v. Boesky*, 672 F.Supp. 754 (S.D.N.Y.1987). Plaintiffs appealed, and we now affirm.

## I. Background

Since this is an appeal from a motion to dismiss, we take as true the allegations of the complaint, as amended. However, as the district court indicated, the 53–page, 114–paragraph complaint contains much irrelevant detail about Boesky's insider-trading activity in general but omits important particulars about the nature of the specific claims in this case. Nonetheless, the complaint makes the allegations set forth below.

As indicated, the complaint seeks recovery pursuant to 18 U.S.C. § 1964(c), which provides that "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." The complaint alleges that Boesky violated 18 U.S.C. § 1962 subsections (a) (investing racketeering income), (b) (acquiring or maintaining interest in enterprise through pattern of racketeering), (c) (conducting affairs of enterprise through racketeering) and (d) (conspiracy to do the foregoing).[1] Although the complaint does not specify the predicate acts of racketeering that underlie each violation, it alleges that Boesky violated the securities laws, the commercial bribery statutes and the wire and mail fraud statutes by conducting insider trading and by paying various people for confidential information. The complaint also accuses Boesky of falsely describing his investment prowess as result-

---

**1.** We do not decide whether the complaint sufficiently alleges a violation of section 1962, including the "pattern" and "enterprise" requirements, because that issue was not decided below nor raised on appeal. This case therefore is not affected by *United States v. Indelicato*, 87–1085, and *Beauford v. Helmsley*, 843 F.2d 103 (2d Cir.1988), in banc hearings ordered April 1, 1988 (2nd Cir.).

ing from diligent research rather than from illegal inside tips, although it is unclear whether this behavior is alleged as a predicate act.

The suit was filed as a class action, although the district court apparently dismissed the case before ruling on whether to certify the class. The class is defined as all those who purchased common stock or call options for common stock in six publicly-traded companies (CooperVision, Inc.; Gillette Co.; Holiday Corp.; Public Service Corp. of Indiana; Time, Inc.; and USX Corp.) between November 3 and November 14, 1986, the day on which the SEC and United States Attorney announced that Boesky had agreed to plead guilty to one count of insider trading. In the weeks following November 14, the prices of the six stocks declined by between 7% and 32%. However, as the district court noted, plaintiffs' total losses are not discernible from the face of the complaint. 672 F.2d at 757. It is clear, though, that the named plaintiffs had only a limited interest in only two of the relevant stocks: one plaintiff bought 40 call options in CooperVision on November 5 and the other bought 100 shares of Time, Inc. on November 7. The plaintiffs either let expire or sold these interests after the SEC announcement.

The complaint also alleges that Boesky owned an undisclosed amount of stock in each of the six companies, and that he sold this stock (apparently with the permission of the SEC) between November 3 and November 14 without disclosing the material and non-public fact that he would soon be pleading guilty. However, these sales and the November 3 starting date for the class seem irrelevant to the present lawsuit, since plaintiffs disavow any claim that Boesky was trading illegally in the six stocks listed above and any claim of injury arising out of these alleged sales. 672 F.Supp. at 756. Their theory is somewhat more attenuated.

Plaintiffs' complaint alleges that "They have been damaged as a result of their investment decisions to invest in takeover companies whose prices were artificially inflated as a result of the unlawful activi-

ties of [Boesky] and his reputation, falsely created and maintained." This general, but cryptic, allegation is the focus of this appeal. We emphasize again that appellants do not contend that Boesky was trading illegally in the six stocks listed above. With this in mind, Judge Goettel noted that plaintiffs' allegation is open to two interpretations. 672 F.Supp. at 756–57. One reading is that Boesky's reputation as a financial wizard was obtained by his various illegal (racketeering) activities and was such that his purchases of the six stocks drove up their prices. A second reading of the allegation is that Boesky's (illegal) investment success made *all* takeover stocks more expensive because it encouraged more people to enter the market in attempts to duplicate his success. Under either of these theories, plaintiffs claim to have paid a price inflated by Boesky's racketeer-created reputation. However, they do not claim to have suffered a loss until the price fell, presumably because until the fall they could have recovered their capital by selling at the still-inflated price.

The district court held that under either reading of the complaint, the losses were not proximately caused by the racketeering violations because Boesky had no duty to protect plaintiffs from the effects of his racketeering. It therefore dismissed the complaint.

Plaintiffs devote much of their brief to challenging the district court's approach to the SEC announcement regarding Boesky's illegal activities. They claim that the district court erroneously ruled that the announcement was an intervening cause of their harm, cutting off Boesky's liability for their damages. This argument is premised on an incorrect reading of the opinion below. The district court ruled that the announcement was not enough to create liability where none existed before; it did not rule that the announcement cut off pre-existing liability. This ruling was substantially correct. As will be seen below, the effect of the announcement is irrelevant because we find that Boesky cannot be held liable to plaintiffs at all.

## II. Discussion

In interpreting the RICO causation requirement (as with any issue of statutory interpretation) we start with the statutory language and the legislative history. In this case, the language is general and there is little legislative history. However, the Supreme Court has set out "general principles surrounding this statute," one of which is that "RICO is to be read broadly" not only because of "Congress' self-consciously expansive language and overall approach, see *United States v. Turkette*, 452 U.S. 576, 586–87 [101 S.Ct. 2524, 2530, 69 L.Ed.2d 246] (1981)," but also because of Congress' "express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497–98, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985) (quoting Pub.L. 91–452, § 904(a), 84 Stat. 947). See generally Lynch, RICO: The Crime of Being a Criminal, 87 Colum.L.Rev. 661, 666–713, 938–45 (1987) (RICO recognizes new harms and creates new wrongs). Balanced against this is the principle—also recognized by *Sedima* and *Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d 384 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam)—that legal liability should not extend as far as factual causation. As a leading treatise explains "[i]n a philosophical sense, the consequences of an act go forward to eternity," and extending liability as far as factual causation therefore "would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' ... Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy." W. Page Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on the Law of Torts 264 (5th ed. 1984) (footnote omitted) [hereinafter, "Prosser"].

The leading case dealing with the "by reason of" language of RICO is *Sedima*, which held that damages caused directly by the predicate acts of a RICO violation are recoverable. It did not focus on the issue raised by this appeal: to what extent are damages caused only indirectly by the predicate acts recoverable? (By damages caused only "indirectly," we mean "racketeering" injury, "competitive" injury or injury caused by the total effect of the pattern of racketeering in the enterprise. See, e.g., *Alexander Grant & Co. v. Tiffany Industries*, 742 F.2d 408, 411 n. 7 (8th Cir.1984), *vacated*, 473 U.S. 922, 105 S.Ct. 3551, 87 L.Ed.2d 673 (1985), *adhered to in relevant part*, 770 F.2d 717 (8th Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986). The distinction is further explained below). In the opinion under review in *Sedima*, this court had held (by analogy to the antitrust-injury requirement of the Clayton Act), that civil RICO allowed recovery only for damages caused by "racketeering injury"—an injury "not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter," like the infiltration of the legitimate economy by racketeers. 741 F.2d 482, 496 (2d Cir.1984).

The Supreme Court reversed and allowed recovery for injury directly caused by the predicate acts, explaining that Congress did not intend to import into RICO all of the restrictive anti-trust standing requirements. Justices Marshall, Brennan, Blackmun and Powell dissented in *Sedima* because they would have allowed recovery only for racketeering injury. They reasoned that "Congress' concern was not for the direct victims ... whom state and federal law already protected, but for the competitors and investors whose businesses and interests are harmed ... or whose competitive positions decline because of infiltration in the relevant market." 473 U.S. at 519, 105 S.Ct. at 3302 (Marshall, J., dissenting). The majority evidently agreed that at least some kinds of indirect injury are recoverable, since they stated that "damages include, but are not limited to, the sort of competitive injury for which the dissenters allow recovery." 473 U.S. 497, n. 15, 105 S.Ct. at 3286 n. 15. However, the facts of *Sedima* did not require either the majority or the dissent to consider the limits on either direct or indirect recovery. That is the question presented here.

## A. Proximate Cause

It is clear that both direct and indirect injuries must be proximately caused. "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct," but only to anyone whose injuries were caused " 'by reason of' a violation of section 1962." *Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d at 398. "[T]his 'by reason of' language . . . imposes a proximate cause requirement on plaintiffs." Id. However, "despite the manifold attempts which have been made to clarify the subject [of proximate cause, there is not] yet any general agreement as to the best approach," either in torts or as applied to RICO. Prosser at 263 (footnote omitted). We believe that plaintiffs cannot show that their injuries were proximately caused either directly or indirectly by Boesky's racketeering violation.

### 1. Injury Caused Directly by the Predicate Acts

Plaintiffs apparently acknowledge that their injury was not caused directly by Boesky's predicate crimes. The commercial bribes did not elicit information about companies with which plaintiffs had any connection. The alleged wire and mail fraud did not directly deprive plaintiffs of money or property. Plaintiffs do not claim injury as a result of any illegal trades by Boesky in the six relevant stocks, and the other illegal securities trades did not involve plaintiffs.

### 2. Indirect Injury

■ Whether plaintiffs have sufficiently alleged an indirect injury is somewhat more complicated, although here too we believe that plaintiffs' alleged injuries are too remote to be recoverable. Plaintiffs allege that the price of the six relevant stocks were inflated either because Boesky's success in other stocks attracted investors to all takeover stocks (regardless of whether Boesky invested in a particular stock), or because Boesky's success created a cult of Boesky watchers who bought the stocks that he bought, which drove up the prices

of those stocks. Plaintiffs also allege that Boesky falsely portrayed his success as being the result of genius and hard work, but they do not specify whether he intended to encourage others to invest. As already indicated, plaintiffs do specifically disclaim injury because of illegal trading in the six relevant stocks.

Assuming that no Boesky watchers were involved in these stocks, the most Boesky can be blamed for is encouraging others to invest in takeover stocks in general. The causal link is even more attenuated if Boesky did not intend to encourage such investment by others. As a matter of policy, we think that a price increase caused solely by an increased attraction to takeover stocks is too distant from Boesky's alleged illegal activities in other stocks to hold Boesky liable to those who did not know in what stocks he was trading.

■ Plaintiffs' other claim—that "the market" knew that Boesky had invested in the six relevant stocks (and did not know that he had begun selling those stocks, see 672 F.Supp. at 756 n. 4), and that Boesky's illegally-enhanced reputation was such that the price of anything he bought rose—is also insufficient. Justice Marshall, in his *Sedima* dissent for himself and three other justices, gives several examples of hypothetical plaintiffs whom he thought Congress intended to allow recovery for their indirect injuries. It is useful to compare the plaintiffs and these archetypes, even though Justice Marshall tended to stress injury in the ordinary commercial, not stock investment, context. We therefore assume, without so holding, that all of Justice Marshall's plaintiffs can recover.

According to Justice Marshall, if a racketeer burns several stores to induce the storekeepers to purchase the racketeer's product, "the direct damages from the predicate acts" are "the cost of the building burned." 473 U.S. at 521, 105 S.Ct. at 3303. Indirect damages are suffered by people who "reacted to offenses committed against other[s]" and purchased the mobster's product without a threat made directly against them. Also, when a racketeer monopolizes a market, indirect damages

are suffered by "purchasers of the racketeer's goods or services, who are forced to buy from the racketeer/monopolist at higher prices, and whose businesses therefore are injured." 473 U.S. at 521, 105 S.Ct. at 3303. Indirect damages are also incurred by the "honest investor" who is displaced when "a 'racketeer' infiltrates and obtains control of a legitimate business either through fraud, foreclosure on usurious loans, [or] extortion." 473 U.S. at 522, 105 S.Ct. at 3303.

Plaintiffs differ from these examples in significant ways. Plaintiffs admittedly did not know that Boesky was involved in the stocks they purchased. They are therefore unlike the intimidated storekeepers, and at best are like the consumers who pay the intimidated storekeeper higher prices, not knowing that racketeering is involved. Those consumers are further removed from the racketeer than the storekeeper is and probably cannot recover under RICO, just as they cannot recover under the antitrust laws. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Extending liability to everyone to whom an illegal price is passed would extend the chain of liability indefinitely because, economists tell us, all products in the economy are related to all other products, and a change in the price of one necessarily affects the remainder. In addition, plaintiffs do not claim they were customers of the racketeer in any normal sense of the word. Moreover, Boesky is not alleged to have been a competitor of plaintiffs. Plaintiffs are small investors, not commercial competitors of Boesky, even though in some theoretical sense all economic beings compete with all others. This is not a case of a head-to-head bidder against Boesky who lost because of Boesky's illegally-enhanced reputation or economic power. For the same reason, plaintiffs are not like the "honest investor" who is displaced by the racketeer who wrests "control of a legitimate business" through racketeering. Neither they nor Boesky allegedly sought control over the six companies.

Of course, Justice Marshall's hypotheticals do not exhaust the list of potential plaintiffs. However, the unique facts of this case persuade us not to extend recovery to these plaintiffs. There are great differences between the stock market and other businesses. Moreover, stockmarket investors know they are in a risky field, and potential takeover targets are especially risky. As noted, under one reading of the complaint, Boesky is blamed for the rise in all takeover stock prices, not only the six at issue here, and although the complaint limits itself to six stocks in two weeks, its internal logic does not require such a limitation. Consequently, if these plaintiffs can recover, then everyone who lost money in the market after Boesky began insider trading can recover also. That Boesky's self-promotion should make him an insurer for all investors defies logic. Although RICO is broad, it is not that broad.

In short, we are usually skeptical of claims that a defendant is liable to hundreds of thousands or even millions of people, and the facts of this case do not require us to delineate the circumstances that would allow such a broad-ranging claim to stand. Plaintiffs here were neither the target of the racketeering enterprise nor the competitors nor the customers of the racketeer. Boesky did not cheat or deceive plaintiffs in any way with regard to the particular stocks in question since they did not know he had purchased them and he did not trade in them illegally. He did not corner the relevant market or control the stocks in question. As noted above, the doctrine of proximate cause reflects social policy decisions based on shared principles of justice. Applying those principles, we conclude that Congress did not intend us to allow RICO recovery to plaintiffs with claims as attenuated as these.

### B. Foreseeability

Plaintiffs argue that the scope of liability is determined only by the foreseeability of injury, that massive insider trading and self-promotion foreseeably lead to a rise in the market price for the relevant stocks, and that it was foreseeable that the price would fall when the illegal props that were

holding it up were removed. This appealingly simple argument proves too much. It is foreseeable that as a result of the disclosure of Boesky's activities, his company would close and that some employees would lose their jobs, that some of those employees would not be able to find new jobs and that their children would not be able to buy new clothes, injuring a clothing manufacturer. However, we have no doubt that the clothing manufacturer is too far from the racketeering to recover under RICO.

Plaintiffs try to avoid slippery slope arguments like this by noting that they were injured in the securities market, which is the same business Boesky was involved in. However, by acknowledging that foreseeability alone does not determine proximate cause, plaintiffs undercut their reliance on foreseeability and are left arguing that Boesky's racketeering is close enough to them to allow recovery as a matter of policy. Our finding to the contrary is set out above.

### III. Conclusion

This opinion has admittedly not set out a rule that will mechanically generate a solution to all RICO causality problems. Too many competing policies are gathered under the label "proximate cause" to make a simple rule possible. Instead, we must be content with making our best efforts to make recovery commensurate with the statutory wrong and to set out "our more or less inadequately expressed ideas of what justice demands" in each case. Prosser at 264.

For the reasons stated above, the judgment dismissing the complaint is affirmed.