**Jeffrey HECHT, Plaintiff,**

v.

**COMMERCE CLEARING HOUSE, INC., William Miller, Louis Ceccoli, and Stanley Stephens, Defendants.**

**No. 86 CIV. 9839 (SWK).**

United States District Court, S.D. New York.

April 21, 1989.

Michael Flomenhaft, New York City, for plaintiff.

Sidley & Austin by Theodore J. Theophilos, Kelley A. Cornish, New York City, by Lawrence I. Kipperman, Jean F. Holloway, Chicago, Ill., for defendants.

MEMORANDUM OPINION
AND ORDER

KRAM, District Judge.

This action arises out of the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1964 (1984) and common-law principles of fraud and *prima facie* tort. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted

pursuant to Federal Rules of Procedure 12(b)(6) and for failure to plead fraud with particularity in accordance with Rule 9(b).

## BACKGROUND [1]

Plaintiff Jeffrey Hecht ("Hecht") began working at defendant Commerce Clearing House ("CCH") in January, 1985 as a Candidate Sales Representative. Complaint ¶¶ 13–14. Prior to that time, defendant Stanley Stephens ("Stephens") held the same position at CCH and serviced the area Hecht took over. Complaint ¶ 34. Defendant William Miller ("Miller") was the District Sales Manager of the New York office and Second Vice President of CCH. Complaint ¶ 25. Defendant Louis Ceccoli ("Ceccoli") worked as an Assistant Manager of the New York office. *Id.* At all times, Stephens worked under the supervision of Miller and Ceccoli. Complaint ¶¶ 32–33.

After commencing work at CCH, Hecht allegedly learned of various fraudulent acts, including illegalities committed by defendants, their agents, servants and employees. Complaint ¶ 35. These acts included forgery of customer signatures on orders and/or confirmations, billing customers for orders lacking proper confirmation in violation of purported CCH procedures, and intentional and/or reckless disregard of subscription cancellation requests. *Id.* Plaintiff learned of these frauds from customers, some of whom advised Hecht of their refusal to purchase further from CCH until irregular and false overcharges from CCH were rectified. Complaint ¶¶ 36–37.

Hecht alleges that commissions he would have received from the renewal of fraudulently sold subscriptions would have represented income derived from the frauds committed by defendants. Complaint ¶ 87. Thus, "[t]o preserve his earnings potential, comply with CCH manual of procedures, terminate the ongoing frauds, the protection, continuation and concealment of which would require his cooperation, Hecht

sought the approval of CCH by Miller and Ceccoli of his effort to rectify the aforesaid fraudulent acts and the corresponding customer accounts." Complaint ¶ 97. Although Miller and Ceccoli allegedly confessed knowledge of the frauds, they suppressed Hecht's efforts to rectify them. Complaint ¶ 98.

Hecht was allegedly told by Miller and Ceccoli that in order to remain at CCH he had to cooperate with the "concealment and/or protection" of these frauds. Complaint ¶¶ 99–100. Because of his refusal to cooperate and his insistence that the defendants rectify the alleged frauds, Hecht claims that he was terminated for insubordination. Complaint ¶¶ 101–02.

## DISCUSSION

### Plaintiff Lacks Standing To Sue Under 18 U.S.C. § 1964(c) For Violations Of 18 U.S.C. § 1962

Plaintiff alleges five violations of 18 U.S.C. § 1962. Complaint ¶ 105.[2] Civil RICO remedies are set forth in 18 U.S.C. § 1964(c) as follows:

> Any person injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor in any appropriate U.S. district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

*Id.* (emphasis added). In *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Court elaborated on the standing requirement implicit in this provision of the statute as follows:

> If the defendant engages in a pattern of racketeering activity in a manner forbidden by [§ 1962], and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).... [T]he plaintiff only has standing if, and can only recover to the extent that, *he has been injured in*

---

**1.** The factual background is culled from the Amended Complaint.

**2.** Plaintiff labels these claims (a) through (e) but fails to specifically base each claim on a particular subsection of § 1962. From the language of

the complaint, it appears that plaintiff alleges violations of § 1962(a)–(d). The Court treats the complaint as alleging violations of 18 U.S.C. § 1962(a)–(d).

*his business or property by the conduct constituting the violation.*

*Id.* at 495–96, 105 S.Ct. at 3284–85 (emphasis added).

In light of *Sedima,* "[t]here are thus, two requirements for standing under § 1964(c): (1) the plaintiff must show that there has been a violation of § 1962, and (2) he must show that his injury was *caused* by the violation." *Pujol v. Shearson/American Exp., Inc.,* 829 F.2d 1201, 1205 (1st Cir.1987). To show a violation of § 1962, the plaintiff must allege that the defendant committed at least two of the predicate acts described in § 1961(1). *Id.* Plaintiff alleges two predicate acts, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. Thus, plaintiff has met this first requirement. The critical question in this case is whether plaintiff has alleged the requisite causal connection between the predicate acts and the plaintiff's injuries—his loss of a job and potential sales commissions—to meet the second requirement.

1. "Whistle Blowing" As Opposed To "Not Participating" In The Alleged RICO Violations

■ Plaintiff's argument that he has been injured in his business or property and thus has standing to sue under civil RICO rests on two allegations. First, plaintiff alleges that because of his insistence that defendants rectify frauds committed on customer accounts, he was terminated. Complaint ¶ 102. Second, plaintiff alleges that because he refused to cooperate with the concealment and/or protection of these frauds he was terminated. Complaint ¶ 100–01. The first allegation may be termed "whistle blowing", whereas the second allegation may be termed "not participating".

This Court has refused to recognize a plaintiff's standing for "whistle blowing", holding that the plaintiffs' injuries did not flow directly from the alleged predicate acts. *Burdick v. American Express Company,* 677 F.Supp. 228, 230 (S.D.N.Y.1988) (former Vice–President of American Express denied standing to sue where he was fired in retaliation for his complaints about Shearson's alleged illegal activities); *see also Nodine v. Textron,* 819 F.2d 347 (1st Cir.1987) (former employee of Textron denied standing to sue where he was fired for reporting an illegal customs scheme to his superiors); *Morast v. Lance,* 807 F.2d 926 (11th Cir.1987) (former bank employee denied standing where he was fired for reporting illegal bank transactions).

Alternatively, plaintiff argues that, unlike the above cases, he was also fired because he refused to participate in the continuing frauds against CCH customers. Pl.Supp.Mem. in Opp. at 3. In *Cullom v. Hibernia National Bank,* 859 F.2d 1211 (5th Cir.1988), the Fifth Circuit directly addressed the issue of whether a "non-participant" as opposed to a "whistle blower" should have standing to sue under civil RICO.

Cullom served as president and chief executive officer of Southwest National Bank ("SNB"). He alleged that SNB and three other banking companies created a fraudulent scheme to sell short-term loan participations to other banks in order to distort their financial conditions. One of the other banks asked SNB to facilitate a loan transaction of this type. Cullom was suspicious of the transaction and sought the advice of SNB's legal counsel. SNB's counsel refused to render an opinion on the matter so Cullom sought the advice of independent counsel. The independent counsel advised Cullom not to act without the advice of SNB's counsel. Ultimately, Cullom refused to participate in the scheme but SNB's loan committee voted, over his objections, to go forward with the transaction. After the vote, Cullom was told by SNB's legal counsel and a member of SNB's board of directors "not to make waves". Shortly afterward, he was asked to, and did resign. He was told that his resignation was requested because he refused to participate and cooperate in the loan participations and because he sought the advice of independent counsel. *See id.* at 1211–12.

The *Cullom* court rejected the plaintiff's contention that the factual distinction be-

tween being fired for blowing the whistle on a RICO violation as opposed to refusing to participate in a RICO violation bears legal significance. *Id.* at 1216. Like the plaintiff in *Cullom,* Hecht principally relies on *Morast, supra,* 807 F.2d 926 and *Callan v. State Chemical Mfg. Co.,* 584 F.Supp. 619 (E.D.Pa.1984), to support his argument that a legal distinction exists between reporting a RICO violation and refusing to participate in one. The *Cullom* court found these cases unpersuasive and rejected the distinction the plaintiff was attempting to make. *See Cullom, supra,* 859 F.2d at 1217 n. 12. This Court concurs.

In *Morast,* the plaintiff was fired because of a conspiracy and the only way the defendants could continue their illegal scheme was to rid the bank of employees who would not go along with the plan. *See Morast, supra,* 807 F.2d at 933. The court stated that "Morast was not fired because he refused to participate in the bank's illegal scheme [, and,] therefore, Morast's injury, his discharge, did not flow directly from the predicate acts, the defendant's banking violations." *Id.* (footnote omitted).

Like the *Cullom* court, this Court does not read these statements to mean that "whistle blowers" do not have standing to sue while "non-participants" do. *See Cullom, supra,* 859 F.2d at 1217 n. 12. "Instead, given Morast's allegation that the bank had to rid itself of those who would not 'go along' to continue its illegal scheme, we read this language as meaning that the only way the court could possibly find that Morast had standing was if he refused to participate in the scheme." *Id.* The *Morast* court merely stated that where a plaintiff alleges a conspiracy to fire employees who did not go along with the illegal scheme, a plaintiff must first make a threshold showing that the plaintiff also refused to "go along", and thus, was one of the targets of the conspiracy. This Court concludes, as did the court in *Cullom,* that *Morast* does not support the proposition that standing analysis is differ-

ent for a "non-participant" than it is for a so-called "whistle blower".

This Court is also not persuaded by plaintiff's reliance on *Callan, supra,* 584 F.Supp. 619, which held that employees had standing to sue under RICO when they were discharged for refusing to participate in a commercial bribery scheme. *Callan* was decided before the Supreme Court's ruling in *Sedima,* which set forth the standing requirement implicit in the civil RICO statute. *Accord Cullom, supra,* 859 F.2d at 1217 n. 14. Rather, this Court adopts the *Cullom* court's reasoning that the employee's action of "reporting" an illegal violation—*i.e.,* "whistle blowing" [3]—is substantially similar to the action of "not participating" because ultimately, in both instances, the employee is objecting to his company's activities by communicating "his doubts about the illegality of the scheme and his objections to the scheme to other persons with authority in the company." *Id.* at 1217. Therefore, the act of "not participating" is legally indistinguishable from the act of "whistle blowing" for the purpose of standing analysis under RICO. *See id.*

This Court has denied "whistle blowers" standing to sue under civil RICO because their injuries do not flow directly from the predicate acts. *See Burdick, supra,* 677 F.Supp. at 230. Thus, having determined that there is no meaningful legal distinction between "whistle blowing" and "not participating", Hecht's alleged injuries as a "non-participant" flow no more directly from the predicate acts than do his alleged injuries as a "whistle blower". The plaintiff Hecht therefore lacks standing to assert his RICO claims, as either characterized as those of a "whistle blower" or "non-participant". *Accord Cullom, supra,* 859 F.2d at 1217.

### 2. Indirect Injury

Plaintiff also attempts to cast his argument in terms of indirect injury. He asserts that although his injuries may be indirect, the Second Circuit has recently construed the RICO statute broadly to in-

---

**3.** *See Pujol, supra,* 829 F.2d 1201; *Nodine, supra,*  819 F.2d 347.

clude indirect injuries. *See Sperber v. Boesky*, 849 F.2d 60; 63 (2d Cir.1988).[4] This Court's decision in *Burdick* predates *Sperber*, therefore it is necessary for us to determine whether the Second Circuit's broad reading of the RICO statute should expand the causal connection requirement to include the indirect injuries suffered by "whistle blowers" or "non-participants."

In *Sperber*, the Second Circuit held that "both direct and indirect injuries must be proximately caused" by the alleged RICO violation. *Id.* at 64. In discussing "proximate cause", the Second Circuit acknowledged that there is yet no general agreement as to the best approach to the subject either in torts or as it applies to RICO. *Id.* The court noted, however, that "the doctrine of proximate cause reflects social policy decisions based on shared principles of justice." *Id.* at 65.

In its analysis of proximate cause, the Second Circuit identified several policy reasons for denying RICO standing to the *Sperber* plaintiffs, such as: (1) the speculative nature of the stock market as opposed to other businesses is such that investors assume the risk of losses as a result of takeovers when they enter the market; (2) its unwillingness to make Ivan Boesky an insurer for all investors; and (3) that the investors were "neither the target of the racketeering enterprise nor the competitors nor the customers of the racketeer." *Id.* The Court expressed skepticism at allowing plaintiffs' broad-ranging claim, and after applying the above-stated policy concerns, it held that the investors' claims were too attenuated to be recoverable. *Id.*

*Cullom* relied in part on *Sperber*, and yet the *Cullom* court was not persuaded to stretch the proximate cause requirement to include either "whistle blowers" or "non-participants."[5] Similarly, this Court does not find that Hecht's injuries were proximately caused by either his conduct as a "whistle blower" or a "non-participant". Like the plaintiffs in *Sperber*, Hecht was "not the target of the alleged racketeering enterprise nor the competitors nor customers of the racketeers." *Id.* at 65. The injuries Hecht asserts are therefore too attenuated to be recoverable under the proximate cause analysis recently applied in this Circuit.

### Violation Of 18 U.S.C. § 1962(d), The Civil RICO Conspiracy Statute

Plaintiff's conspiracy claim is deficient in two respects: (1) plaintiff lacks standing to sue; and (2) plaintiff has not properly pled a conspiracy violation. Section 1964 governs all claims under 18 U.S.C. § 1962. Therefore, the standing requirement discussed above is equally applicable to a conspiracy claim. Though the nature of the allegation is different, plaintiff's injuries are still too attenuated to meet the *Sperber* proximate cause requirement.[6]

Plaintiff has also failed to properly plead a conspiracy claim. The court in *United States v. Bonanno Organized Crime Family*, 683 F.Supp. 1411 (E.D.N.Y. 1988), addressed the pleading requirements for an alleged violation of 18 U.S.C. § 1962(d). "Conclusory allegations or a 'bare bones' statement of conspiracy will not withstand a motion to dismiss, and sufficient facts must be alleged to allow the

---

**4.** In *Sperber*, the plaintiff investors argued that they suffered civil RICO injury when the market price of six takeover stocks dropped following the SEC's announcement that Ivan Boesky had been involved in insider trading and other illegal acts. *Id.*, at 61.

**5.** Interestingly, in *Cullom* the court noted that "the policy reasons for allowing whistle blowers, as opposed to nonparticipants, to sue under RICO are more persuasive because in addition to exposing the illegal scheme to the public by bringing a private suit, the whistle blower often times exposes the illegal scheme to the authorities and cooperates with the authorities, thus 'strengthening the legal tools in the evidence-

gathering process.' Organized Crime Control Act of 1970, Pub.L. No. 91–452, 1970 U.S.Code Cong. & Admin.News, 1073 (statement of findings and purpose)." *Cullom, supra*, 859 F.2d at 1217 (footnote omitted). Despite these policy reasons, however, the court held that in both types of actions, the employee's injuries do not flow from the predicate acts. *Id.* This Court agrees.

**6.** *But see Williams v. Hall*, 683 F.Supp. 639 (E.D. Ky.1988) (discharged Ashland Oil employees permitted to sue under civil RICO conspiracy statute where they alleged that part of the conspiracy was to cover up illegalities by terminating employees opposed to the schemes).

defendant to form a response." *Id.* at 1439. Furthermore, it is essential to a conspiracy claim to allege that the defendant was party to an unlawful agreement. *Id.* at 1440. "In the Second Circuit, a required element of a RICO conspiracy is that the defendant himself have agreed to commit two or more predicate acts." *Id.* (citing *United States v. Teitler,* 802 F.2d 606, 613 (2d Cir.1986); *United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984)); *see also United States v. Friedman,* 854 F.2d 535, 562–63 (2d Cir. 1988) (upheld conspiracy conviction where evidence supported verdict that RICO coconspirators had agreed to participate in the affairs of the same enterprise). Even though a plaintiff alleges the commission of two or more predicate acts by defendants, "the commission of the acts is distinct from an agreement to commit them, and a violation of § 1962(d) requires different proof from a violation of § 1962(c)." *Bonanno, supra,* 683 F.Supp. at 1440 (citing *United States v. Benevento,* 836 F.2d 60, 73 (2d Cir.1987)); *see also United States v. Rastelli,* 870 F.2d 822, 832 (2d Cir. March 16, 1989) ("We adhere to the concept that agreement among coconspirators is the critical element of a RICO conspiracy.")

Plaintiff alleges that defendants violated 18 U.S.C. § 1962 in five different ways. Complaint ¶ 105. Two of these allegations are "conspiring with agents, servants and employees to conduct their affairs through a pattern of racketeering activity" and "conspiring to violate provisions of § 1962(a), (b) and (c)." *Id.* Based on these allegations, the conspiracy claim is insufficient because plaintiff does not allege an agreement by each defendant to commit two predicate acts.

### The State Law Claims

██ Plaintiff also alleges pendent state law claims of *prima facie* tort and fraudulent misrepresentation and omission in counts two and three, respectively. If the federal claims in an action based on federal question jurisdiction are dismissed before trial, the pendent state law claims should be dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 716, 86 S.Ct. 1130, 1131, 16 L.Ed.2d 218 (1966); *see also Hughes v. Patrolmen's Benev. Ass'n of City of N.Y.,* 850 F.2d 876, 881 (2d Cir. 1988) ("If, during the course of trial, it becomes apparent that the federal claims are discernibly meritless, both the federal and pendent state law claims must be dismissed."). In the present case, plaintiff's federal RICO claims are dismissed, therefore his pendent state law claims are dismissed as well.

### CONCLUSION

Plaintiff lacks standing to sue under 18 U.S.C. § 1964(c) for alleged violations of 18 U.S.C. § 1962(a)–(d) and has failed to properly plead a conspiracy claim under 18 U.S. C. § 1962(d). Therefore, count one of the amended complaint is dismissed with prejudice. Plaintiff's pendent claims for *prima facie* tort (count two) and fraudulent misrepresentation and omission (count three) are dismissed with prejudice as well.

SO ORDERED.