**UNITED FENCE & GUARD RAIL CORP., Plaintiff,**

v.

**D. LAMBERT RAILING CO., INC., et al., Defendants.**

**No. CV 90–0906.**

United States District Court, E.D. New York.

Nov. 8, 1991.

---

Hayes & Hayes, by Harry R. Hayes, III, Albany, N.Y., for plaintiff.

Librett, Friedland & Lieberman, Garden City, N.Y., for defendants Lambert Railing, Donald Lambert and Jack Raynor.

Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger by Richard J. Nicolello, Garden City, N.Y., for defendants Chestnut Fence and Asphalt and Baldwin.

William H. Baron, Port Jefferson, N.Y., for defendants Village Dock and Hough.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced action, plaintiff United Fence & Guard Rail Corporation ("United Fence" or "plaintiff") sues D. Lambert Railing Co., Inc. ("Lambert"), Donald Lambert, John Baldwin, Jack Raynor, Chestnut Fence and Asphalt Paving Co., Inc. ("Chestnut"), Charles Chestnut, Village Dock, Inc., and Helen Hough (collectively "defendants"), for damages and injunctive relief pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. Currently before the Court are defendants' Chestnut, John Baldwin and Charles Chestnut's motion for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. In addition, defendants Lambert, Donald Lambert, and Jack Raynor move for judgment on the pleadings, although the Court treats that motion as one for summary judgment as well. After a brief statement of the background facts, the Court will turn to consider the issues raised by defendants' motions.

### BACKGROUND

For approximately the past twenty-five years, plaintiff has been in the business of manufacturing, selling, and installing bridge and guardrail fences and signs pursuant to public highway contracts in New York State. Apparently, plaintiff performed the bulk of these contracts in Nassau and Suffolk Counties. Defendants are engaged in essentially the same business as plaintiff. At the center of this controversy is a certification that both Chestnut and Village Dock acquired from the State of New York in 1981, qualifying those companies as eligible Disadvantaged/Minority Business Enterprises ("DMBE") for purposes of the New York Department of Transportation ("NYDOT") Disadvantaged/Minority/Women Business Enterprise Program ("DMW"). The goal of the program is to enable minority and female owned business enterprises to secure NYDOT subcontract work for construction projects in New York State.[1]

The complaint in this action alleges that defendants, by means of mail and wire fraud, secured many NYDOT contracts by holding out defendants Chestnut and Village Dock, Inc. as legitimate DMBEs, when in fact they should not have been so classified. In point of fact, Chestnut has been terminated from the DMW program; Village Dock, Inc. successfully appealed a similar termination to the extent that a reviewing body stayed the decertification pending a remand for further investigation. The complaint further alleges that defendants Chestnut and Village Dock, Inc. were "front" DMBEs for defendant Lambert, which, although a non-DMBE, actually controlled the business operations of Chestnut and Village Dock with regard to the NYDOT contracts.

Plaintiff, a non-DMBE company, alleges that approximately twenty-four subcon-

---

1. Defendant Charles Chestnut, a Black male, is principal of Chestnut; defendant Helen Hough, a female, is president of Village Dock, Inc.

tracts were awarded to Chestnut between 1984 and 1988 by virtue of its DMBE status, allowing defendants to gain a substantial edge over plaintiff and cause a decrease in plaintiff's market share of the industry. This alleged "Lambert–Chestnut" scheme forms the basis of plaintiff's claims against these defendants. As to Village Dock, Inc., plaintiff alleges that it similarly acted as a "front" for Lambert, thereby obtaining approximately eleven subcontracts during the period 1988 to 1989, and plaintiff asserts that the "Lambert–Village Dock" scheme likewise caused plaintiff financial injury.

Defendants argue, *inter alia*, that plaintiff is without standing to bring this RICO lawsuit. More particularly, defendants rely on the causation requirement of a RICO claim to point out that plaintiff's injury is too remote from any alleged violations to give it standing. By way of illustration, accepting the complaint's allegations as true, plaintiff's theory of its damages is premised on the following sequence of factors: Chestnut and Village Dock defrauded New York State through their certifications as DMBEs; if they had not been certified, Chestnut and Village Dock would not have been eligible for any set-aside work in the DMW program; then the private contractors on the various contracts involved *may* not have awarded the sign and guardrail aspects of the subcontracts to a certified DMBE; therefore, plaintiff *may* have been awarded the work. *See* Complaint at paras. 20–56.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court noted that "[t]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and

on which that party will bear the burden of proof at trial." 477 U.S. at 322, 106 S.Ct. at 2552. In addition, all reasonable inferences are to be drawn in favor of the nonmoving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987) (citations omitted). With these principles in mind, the Court turns to address the motions at bar.

For purposes of establishing a private RICO action under section 1962(c), a plaintiff must allege that the defendant: (1) was employed by or associated with (2) an enterprise engaged in, or the activities of which affected, interstate or foreign commerce, and (3) that the person conducted or participated in the conduct of the enterprise's affairs (4) through a pattern of racketeering activity through the commission of two or more predicate acts. 18 U.S.C. § 1962(a)–(c); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

Moreover, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property *by the conduct constituting the violation.*" *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285 (emphasis added). As to this showing, the Second Circuit has clarified a plaintiff's burden to the following extent: (1) that the injury be to plaintiff's business or property; (2) that there is a causal connection between the prohibited conduct and the plaintiff's proprietary injury; and (3) that the conduct that caused the injury was a violation of section 1962. *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990) (citations omitted); *see also Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1100 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Sperber v. Boesky,* 849 F.2d 60, 64 (2d Cir.1988); *United Fence & Guard Rail Corp. v. Royal Guard Fence Co. Inc., et al.,* 765 F.Supp. 55, 57 (E.D.N.Y.1991).

Application of those elements to the instant case requires the same inquiry that this Court faced in another action brought by plaintiff against different defendants, based on the same theory which plaintiff

advances herein. *See United Fence,* 765 F.Supp. at 56. Accordingly, the court looks to the issue of causation. *Id.* at 57. Plaintiff argues that the injury suffered was a decrease in its market share of NYDOT subcontract work. However, plaintiff fails to show a causal link between its injury and defendants' alleged RICO violations, a failure which is fatal to the complaint. *See Hecht,* 897 F.2d at 23; *Sperber,* 849 F.2d at 64; *Miller v. Helmsley,* 745 F.Supp. 932, 935 (S.D.N.Y.1990) (noting that "[i]t is imperative that the plaintiff show that he was injured by the conduct constituting the violation...") (citations omitted).

As plaintiff necessarily concedes, the alleged scheme would have been designed to defraud the State and the NYDOT, and there would not have been an intention to defraud plaintiff. Nevertheless, plaintiff could be heard to argue that the damages caused by defendants' alleged RICO violations aimed at the State caused plaintiff's loss of subcontract work as a natural consequence. However, the point which plaintiff is unable to persuasively overcome is that the work obtained by Chestnut and Village Dock, as DMBEs, was work that plaintiff was ineligible for in any event, since the work was only offered to qualified DMBEs, which plaintiff is not. Thus, the fact that defendants' alleged mail fraud may have enabled them to obtain subcontracts available only to qualified DMBEs completely belies plaintiff's argument that it was directly injured by those acts. *See United Fence,* 765 F.Supp. at 58 (citing *Hecht,* 897 F.2d at 23). It appears to the Court that the more direct cause of any "drop" in plaintiff's market share may be the NYDOT's disadvantaged/minority/women business program itself.[2]

As this Court noted earlier, even accepting plaintiff's liberal construction of the damage requirement, the mere coincidental drop in plaintiff's market share, absent any showing that it was the result of defendants' alleged RICO violations, is by itself insufficient to support proof of causation. *Id.* Certainly plaintiff cannot argue the mandatory nature of proximate cause. *See e.g., Sperber,* 849 F.2d at 64; *see also*

*Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285; *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1311 (2d Cir.1990) (citations omitted); *Miller,* 745 F.Supp. at 935; *Schiffels v. Kemper Financial Servs., Inc.,* 767 F.Supp. 909, 912 (N.D.Ill. 1991) (accepting the Second Circuit's approach to RICO standing as described in *Hecht*). As to the absence of a showing of the material element of causation, plaintiff has failed to raise a genuine issue of fact; accordingly, defendants' motions for summary judgment must be granted. *See* Fed. R.Civ.P. 56(c); *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, are granted. The Clerk of the Court is directed to enter judgment for defendants and close the file in this case.

SO ORDERED.

---

**2.** In point of fact, plaintiff apparently has a federal lawsuit pending in the Northern District of New York which challenges the constitution-ality of the program on equal protection grounds.