**IDEAL STEEL SUPPLY CORP., Plaintiff,**

v.

**Joseph ANZA, Vincent Anza and National Steel Supply, Inc., Defendants.**

**No. 02 Civ. 4788(RMB).**

United States District Court, S.D. New York.

April 1, 2003.

Marchall Beil, Ross & Hardies, New York City, for plaintiff.

Richard Huffman, Fox, Horan & Camerini, LLP, New York City, for defendants.

## DECISION AND ORDER

BERMAN, District Judge.

### I. Background

In this action, filed in June 2002, Ideal Steel Supply Corp. ("Plaintiff" or "Ideal") alleges that National Steel Supply, Inc. ("National") and its owners, Joseph and Vincent Anza (collectively, "Defendants"), engaged in a "racketeering" scheme in violation of 18 U.S.C. §§ 1962(a) and (c)("RICO"). Ideal's amended complaint also includes a state law breach of contract claim. Defendants move to dismiss pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) and 9(b).

The Court treats the following allegations in the amended complaint ("AC") as true for the purposes of this motion. *See Piccone v. Bd. of Directors of Doctors Hosp.,* 97 Civ. 8182, 2000 WL 1219391, at *1 (S.D.N.Y. Aug.28, 2000).

Ideal and National distribute and sell steel mill products and related hardware, supplies, and services, including steel bars and sheets, in a "lumber yard" setting to ornamental ironworkers, small steel fabricators, and do-it-yourself homeowners. (AC¶¶ 2, 16.) Ideal and National each have two store locations, one in the Bronx and one in Jamaica, Queens. (AC¶¶ 3, 19–20.) Each one of Ideal's stores is located within a few minutes of each of National's stores. (AC¶¶ 19–20.)

National is Ideal's principal competitor in New York City for the products it sells. (AC¶ 15.) No other business in the Bronx or Queens sells "the same or a similar comprehensive array of products and services or compete[s] for the same customers." (AC¶¶ 3, 16, 19–20.) "As Ideal and National sell at nearby locations similar product lines of generic commodities, they compete principally on the basis of price."

(AC¶¶ 3, 21.) Demand in the market does not fluctuate based on price, but on the robustness of the construction industry. (AC¶ 22.) Accordingly, Ideal and National can not increase demand by reducing prices or aggressively marketing their products. (AC¶ 22.) Increases in sales at one of the competitor's stores—if not caused by overall market demand—generally occurs with concomitant decreases in the other's sales. (AC¶ 22.)

The products Ideal and National sell are taxable at 8.25% unless they fall within one of the New York State sales tax exemptions.[1] (AC¶¶ 18, 23.) New York State tax law requires businesses to pay the taxes collected and to submit an account of taxable sales in monthly or quarterly returns. (AC¶ 25.) It is alleged that National does not charge cash-paying customers sales tax (on taxable sales) in violation of New York State sales tax laws. (AC¶¶ 4, 27.) Defendants do not report or pay to the New York State Department of Taxation and Finance any sales tax on the sales for which Defendants illegally ignore sales tax. (AC¶¶ 4, 28.) Since 1998 and continuing to today, National has filed (either by U.S. mail or electronically) fraudulent sales tax returns with the New York State Department of Taxation and Finance. (AC¶¶ 5, 29, 44, 47.) The returns misrepresent the amount of taxable sales at National and the amount of sales tax National collects each reporting period. (AC¶ 29.)

Defendants' "cash, no tax" scheme directly injures Ideal because Ideal cannot charge its customers 8.25% more than National and still compete on price, the principal factor in choosing between Ideal and National. (AC¶¶ 6, 48.) "National offers customers a substantial savings over Ideal

[1]. The combined New York State and City sales tax equals 8.25%. *See* N.Y. Tax Law §§ 1105, 1107, 1109 (McKinney Supp.2003).

because National does not charge, collect or pay the required sales tax of 8¼% on non-exempt cash sales, thereby reducing the total price paid by customers making cash purchases at National, without reducing National's profit margin." (AC¶¶ 6, 32, 49.) As a result of Defendants' "cash, no tax" scheme, Ideal has experienced a decrease in taxable cash sales. (AC¶¶ 6, 36, 50.) For example, "Ideal experienced a steep drop in taxable cash sales after National opened its Bronx facility that was disproportionate to the effect that National's new Bronx location had on Ideal's overall sales, including non-cash taxable sales and tax-free sales made to purchasers with a valid resale or tax-exempt certificate." (AC¶ 35.) The effect of Defendants' "cash, no tax" scheme "is to create an improper competitive advantage for National over Ideal." (AC¶¶ 32, 49.)

"By filing, or directing National to file, by U.S. mail New York State sales tax returns that they knew to be fraudulent on a quarterly (or monthly) basis for each reporting period at least since 1998 if not before, defendants Joseph and Vincent Anza on each occasion violated the federal mail fraud statute (18 U.S.C. § 1341). Each violation constitutes a predicate act of racketeering under 18 U.S.C. § 1961(b). To the extent that any of the false returns are filed with the State electronically, defendants also violated 18 U.S.C. § 1343. Each violation of this statute is a predicate act of racketeering."[2] (AC¶¶ 45–46; see AC¶ 5.) Ideal claims that this "cash, no tax" scheme constitutes a pattern of RICO

racketeering, punishable under 18 U.S.C. § 1962(c), (AC¶¶ 7, 45–51); that Defendants (re)invest the money from the alleged RICO scheme in National's Bronx location, punishable under 18 U.S.C. § 1962(a), (AC¶¶ 55–58); and that the scheme breaches a settlement agreement the parties executed in a 1997 litigation, wherein National and Ideal agreed, among other things, not to interfere with each others' "business activities other than through legitimate and proper competition."[3] (AC¶¶ 8, 60–67.) **For the reasons set forth below, the Court grants Defendants' motion to dismiss.**

## II. Standard of Review

A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see McLaughlin v. Anderson*, 962 F.2d 187, 190 (2d Cir.1992). In resolving a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir.2001); *McLaughlin*, 962 F.2d at 190. In other words, the burden on the movant is very substantial, as the issue before the Court in a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the

---

**2.** *See Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir.1985)("Mail fraud qualifies as a racketeering activity under the statute, 18 U.S.C. § 1961(1), and mailing fraudulent state sales tax returns qualifies as mail fraud."); *see also Porcelli v. United States*, 964 F.2d 1306, 1307 (2d Cir.1992).

**3.** "In 1994, National and other businesses owned and operated by Joseph and Vincent

Anza filed a lawsuit against Ideal seeking damages for Ideal's alleged interference with National's customers and employees. *National Security Gates, Inc., et al. v. Vincent Brancato and Sons, Inc., et al.*, New York State Supreme Court, Queens County, Index No. 014536/94." (AC¶ 60.) "That lawsuit was discontinued pursuant to a 'Stipulation of Settlement' dated January 14, 1997." (AC¶ 61.)

claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995)(quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir.1976)(per curiam)). While "the well-pleaded material allegations of the complaint are taken as admitted ... conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994)(internal quotation omitted). Where, as here, a complaint alleges (mail and/or wire) fraud, the pleading requirements of Fed.R.Civ.P. 9(b) apply. *Id.; McLaughlin*, 962 F.2d at 191.

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim ... has almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y.1996) (citations omitted), *aff'd*, 113 F.3d 1229, 1997 WL 259746 (2d Cir.1997).

## III. Analysis

Along with the amended complaint, the Court has reviewed the Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), dated October 11, 2002 ("Defs.Br."); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated November 8, 2002 ("Pl. Br."); and the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), dated November 19, 2002.[4]

The Defendants argue, in support of their motion, that (1) Plaintiff lacks standing to bring a RICO claim because Plaintiff does not allege "proximate cause," Def. Br. at 6 ("National's alleged avoidance of New York State sales tax could only directly affect New York State tax collections, not Ideal's business."); (2) Plaintiff has failed to plead the allegations of mail and wire fraud with particularity as required under Fed.R.Civ.P. 9(b); and (3) the Court must dismiss Plaintiff's supplemental state law claims if the Court dismisses the RICO claims.

Plaintiff responds that proximate cause exists under applicable case law. Plaintiff also argues that the amended complaint, fairly read, alleges fraud with sufficient particularity, and, where it lacks particularity, "the relevant facts are peculiarly within the [Defendants'] knowledge." Pl. Br. at 21–22. Plaintiff concedes that if the Court dismisses the RICO claims "the basis for supplemental jurisdiction is attenuated," but adds that a dismissal of the state-law claims would not be on the merits. Pl. Br. at 25 n. 12.

■■■■ "RICO grants standing to pursue a civil damages remedy to '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962].' 18 U.S.C. § 1964(c). In order to bring suit under § 1964(c), a plaintiff must plead (1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Commercial Cleaning*, 271 F.3d at 380 (alteration in original). Generally, to satisfy RICO's causation element a complaint must allege that a defendant's violation was both a "but for" or factual cause of plaintiff's injury and the proximate cause, as well.

---

4. Oral argument is not needed. *See* Letter from Counsel for Defendant, dated Nov. 19, 2002 ("[B]oth sides have agreed that the parties are content to leave the question of oral argument to the Court.")

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265–68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). In complaints predicated on mail or wire fraud, a plaintiff must plead "'loss causation,' meaning that the misrepresentation must be both an actual and a proximate source of the loss that the plaintiffs suffered," *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169–70 (2d Cir.1999), *and* "transaction causation," which requires a plaintiff to "demonstrate that [plaintiff] relied on [d]efendants' misrepresentations." *Mezzonen, S.A. v. Wright*, 97 CIV. 9380, 1999 WL 1037866, at *5 (S.D.N.Y. Nov.16, 1999); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings*, 85 F.Supp.2d 282, 302 (S.D.N.Y. 2000), *aff'd* 2 Fed.Appx. 109, 2001 WL 46565 (2d Cir. Jan.18, 2001); *see also Moore*, 189 F.3d at 171–72; *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 189 (2d Cir.1995); *Macomber v. Travelers Prop. Cas. Corp.*, 3:98–CV–01060, 1999 WL 118005, at *2 (D.Conn. Jan.28, 1999). *See generally* Hon. Jed S. Rakoff & Howard W. Goldstein, *RICO: Civil & Criminal Law & Strategy*, § 1.07[6], at 1–128 (2002)("The Second Circuit ... requires that in the context of predicate acts grounded in fraud the plaintiff must prove both transaction causation and loss causation.").

■ Ideal has not plead transaction causation. Although Ideal alleges that the New York State Department of Taxation and Finance relied on Defendants' alleged misrepresentations (AC¶ 30), Ideal has not alleged—indeed, can not allege—that Plaintiff relied on the sales tax returns Defendants mailed or wired to the New York State Department of Taxation and Finance. As a result, Ideal's RICO claims fail. *See Odyssey*, 85 F.Supp.2d at 302 (holding that "[t]o show transaction causation, ... plaintiff must show that it relied on defendant's omission."); *Mezzonen*, 1999 WL 1037866, at *5–*6; *Moore*, 189 F.3d at 169–71.[5]

Plaintiff's reliance on *Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374 (2d Cir.2001)(*"Commercial Cleaning"*) to establish causation is not compelling. In *Commercial Cleaning*, reliance was not an issue—the plaintiff based its RICO complaint upon a violation of the Immigration and Nationality Act, 8 U.S.C. § 1324(a). *Commercial Cleaning*, 271 F.3d at 378, 380 (alleging that defendant "engaged in a pattern of racketeering activity by hiring undocumented aliens for profit in violation of Section 274 of the Immigration and Nationality Act"). Ideal, on the other hand, bases its RICO claim on mail and wire fraud—and that is a critical difference. *See Piccone*, 2000 WL 1219391, at *5 ("If one alleges predicate acts of mail fraud, as [plaintiff] does, it is necessary to allege

---

5. *See also Piccone*, 2000 WL 1219391, at *5 (holding that plaintiff "fail[ed] to plead sufficient facts demonstrating either that he relied on defendants' fraudulent misrepresentations or that such reliance caused him injury"); *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 925 F.Supp. 162, 164 (S.D.N.Y.1996)(denying motion to reconsider holding that "[i]n alleging mail or wire fraud as predicate acts in a civil RICO complaint, it *is necessary to allege* that the injured party relied on the fraudulent misrepresentations of the defendant, and that the reliance was the cause of the injury"); *Miller v. Helmsley*, 745 F.Supp. 932, 940 n. 5 (S.D.N.Y.1990)(siding, in dicta, with cases holding that plaintiff must allege it relied on fraud); *accord Corcoran v. American Plan Corp.*, 886 F.2d 16, 19–20 (2d Cir.1989); *United States v. Evans*, 844 F.2d 36, 39 (2d Cir.1988). Other courts appear to have held that third-party reliance is sufficient. *See, e.g., Sterling Interiors Group v. Haworth, Inc.*, 94 Civ. 9216, 1996 WL 537482, at *3 (S.D.N.Y. Sept.23, 1996); *Trautz v. Weisman*, 819 F.Supp. 282, 286 (S.D.N.Y.1993); *Shaw v. Rolex Watch U.S.A., Inc.*, 726 F.Supp. 969, 973 (S.D.N.Y.1989); *see also Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1311 (2d Cir.1990).

that the injured party relied on the fraudulent misrepresentations of the defendant, and that the reliance was the cause of the injury.").

"[W]e must be content with making our best efforts to make recovery commensurate with the statutory wrong and to set out 'our more or less inadequately expressed ideas of what justice demands' in each case." *Sperber v. Boesky,* 849 F.2d 60, 66 (2d Cir.1988)(quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* 264 (5th ed.1984)). The Court holds that Plaintiff can not, as a matter of law, allege that it relied on Defendants' alleged misrepresentations to the New York State Department of Taxation and Finance. *See, e.g., Odyssey,* 85 F.Supp.2d at 302; *see also Moore,* 189 F.3d at 169–70. Consequently, Plaintiff can not satisfy the pleading requirements for its RICO claims. *See Sperber,* 849 F.2d at 60 (dismissing complaint alleging violations of 1962(a) through (d) for failure to plead causation adequately); *Miller,* 745 F.Supp. at 935–40 (same).[6]

Because the Court dismisses Plaintiff's federal (RICO) claims, the Court also dismisses the state law breach of contract claim (without prejudice). *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 130 (2d Cir.2003)("In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage."); *Piccone,* 2000 WL 1219391, at *7 (dismissing state law claims without prejudice to refiling in state court); *see* Pl. Br. at 25 n. 12.

6. Because the Court dismisses Plaintiff's RICO claims on causation grounds, the Court need not address Defendants' alternative argument that the pleading fails to comply with

the particularity requirements of Fed.R.Civ.P. 9(b). *See Barr Labs., Inc. v. Quantum Pharmics, Inc.,* 827 F.Supp. 111, 116 n. 6 (E.D.N.Y. 1993); *Miller,* 745 F.Supp. at 934.

## IV. Conclusion and Order

For the reasons stated, the Court grants Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The Court respectfully requests that the Clerk close this case.