**Dana WILLIS, Plaintiff, Appellant,**

v.

**Kevin LIPTON, et al., Defendants, Appellees.**

**No. 90–1930.**

United States Court of Appeals, First Circuit.

Heard Feb. 4, 1991.

Decided Oct. 28, 1991.

Albert P. Zabin with whom R. Keith Partlow and Schneider, Reilly, Zabin & Costello, P.C., Boston, Mass., were on brief, for plaintiff, appellant.

James B. Re with whom Ellen G. Grant, Daniel A. Less and Sally & Fitch, Boston, Mass., were on brief, for defendants, appellees Lipton, et al.

Victor H. Polk, Jr., Boston, Mass., for defendant, appellee WGY Coin, Inc.

Robert R. Pierce with whom Thomas E. Peisch and Conn, Kavanaugh, Rosenthal & Peisch, Boston, Mass., were on brief, for defendant, appellee Minshull.

Before CAMPBELL, Circuit Judge, ALDRICH, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Plaintiff Dana Willis appeals the dismissal of his civil complaint alleging injuries resulting from defendants' fraudulent scheme for grading and pricing rare coins bought and sold by Standard Financial Management Inc. ("Standard"), a corporation formed by Willis and of which he was the major stockholder and chief executive officer. The complaint alleged a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and asserted pendent state law claims for interference with advantageous business relations and breach of fiduciary duty. The district court dismissed the RICO count, on the ground that Willis had not been harmed "by reason of" the RICO violation. See 18 U.S.C. § 1964(c). The pendent state law claims were dismissed without reaching the merits. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Rice v. President & Fellows of Harvard College, 663 F.2d 336, 339 (1st Cir.1981), cert. denied, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982). We affirm.

I

BACKGROUND

The RICO count alleged that Willis was victimized by a broad-ranging conspiracy to defraud him, his business and its customers through a complicated "kickback" scheme involving sham corporations and over-grading of rare coins. According to the complaint, Willis purchased a portion of a rare coin business formerly owned and operated by alleged co-conspirators James Halperin and Steven Ivy. As a condition of the sale, Willis was to employ as chief numismatist, Paul Taglione, who was to become a stockholder in the acquiring corporation, and Willis was to retain Halperin as an independent consultant in the purchasing and grading of coins. Willis alleged that Halperin, Ivy, Taglione, and the remaining defendants, formed a conspiracy to sell Standard over-graded coins at excessive prices for resale to Standard's customers. Taglione, who oversaw coin purchases for Standard, would certify coin prices and grades in return for a "kickback" calculated at forty percent of the margin between their actual value and the inflated price certified by Taglione. The conspirators allegedly used the mails, telephone, electronic transfers and interstate carriers to execute their fraudulent scheme.

The Federal Trade Commission ("FTC") began to investigate Standard in 1984, in response to complaints from dissatisfied customers unable to recoup their investments. In 1987, the FTC brought an enforcement action against Standard in the United States District Court for the District of Massachusetts. See 15 U.S.C. § 53(b). Shortly thereafter Standard and the FTC entered into a consent judgment which called for district court appointment of a special counsel to take control of all Standard assets, but reserved to the FTC the right to pursue restitution in behalf of defrauded Standard customers. The special counsel filed a chapter 11 petition in behalf of Standard on the same day the consent judgment was entered. The special counsel immediately discharged Willis from his employment with Standard and brought an action for damages against him

in behalf of Standard. Although there was no criminal indictment and Willis was not required to make restitution,[1] he became the target of several consumer lawsuits and received adverse publicity. The complaint alleged that Willis suffered loss of employment and reputation, and incurred substantial legal expense as a consequence of the RICO conspiracy.

## II

## DISCUSSION

■ RICO accords a private right of action for treble damages and attorney fees to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter...." 18 U.S.C. § 1964(c). A plaintiff enjoys standing under section 1964(c) only if he can demonstrate (1) a violation of section 1962, and (2) harm "by reason of" the violation. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495–496, 105 S.Ct. 3275, 3284–3285, 87 L.Ed.2d 346 (1985); *Pujol v. Shearson/American Express, Inc.,* 829 F.2d 1201, 1205 (1st Cir.1987). The harm alleged may be either "direct" or "indirect," so long as it "flows from" the predicate acts. *Bass v. Campagnone,* 838 F.2d 10, 12 (1st Cir.1988). Mere "cause in fact" is insufficient to confer RICO standing, however, since section 1964(c) establishes a proximate cause requirement as well. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990) (distinguishing between "cause-in-fact" or "but for" causation and proximate cause); *O'Malley v. O'Neill,* 887 F.2d 1557, 1561 (11th Cir.1989) (referring to cause in fact as "but for" causation), *cert. denied,* — U.S. —, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); *Cullom v. Hibernia Nat'l Bank,* 859 F.2d 1211, 1214 (5th Cir.1988) (requiring proximate cause); *Sperber v. Boesky,* 849 F.2d 60, 63 (2d Cir.1988) ("factual causation" should not define extent of RICO liability); *Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 398 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam) (requiring proximate cause). Thus, although "RICO is to 'be liberally construed to effectuate its remedi-

al purposes,'" *Sedima,* 473 U.S. at 498, 105 S.Ct. at 3286 (quoting Pub.L. 91–452, § 904(a)), RICO liability is not to be extended without limit, for "'[s]ome boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.'" *Sperber,* 849 F.2d at 63 (quoting W. Page Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser & Keeton on the Law of Torts* 264 (5th ed. 1984) (footnote omitted)).

Without deciding, the district court assumed that the instant complaint pled a section 1962 violation, but concluded on the basis of the allegations of the complaint that only Standard and its customers could have sustained harm proximately caused by any alleged RICO violation and, moreover, that any alleged harm to Willis was "incidental to, and the result of, that sustained by Standard." The district court accordingly ruled that any incidental injury to Willis was insufficient as a matter of law to confer RICO standing under section 1964(c).

Willis concedes that he lacks standing to bring a stockholder action to redress any injury sustained by Standard. Willis instead asserts individual standing under section 1964(c) on the basis that the alleged injuries—loss of employment, damage to reputation, and legal expense incurred as a result of the conspiracy—are personal to him and not simply derivative of the bankrupt corporation. We hold that the injuries allegedly sustained by Willis are too remote to have been proximately caused by the section 1962(c) violations pleaded in the complaint.

■ Willis asserts RICO-related harm in the form of lost employment with Standard. However, we have held that corporate-employee harm more immediately linked to an alleged RICO violation did not give rise to a right of action. *See Pujol,* 829 F.2d at 1205 (dismissal to prevent employee from reporting RICO violations); *Nodine v. Textron, Inc.,* 819 F.2d 347 (1st Cir.1987) (dismissal of employee for reporting conduct constituting predicate acts under RICO insufficient to support employee RICO claim); *see also Hecht,* 897 F.2d at

---

1. The special counsel apparently released Standard's claims against all wrongdoers.

24 (citing cases). In these cases we determined that the employees were not harmed "by reason of" the RICO violation since the predicate act itself did not cause their dismissal.

Similarly, Willis lost his employment not as a proximate consequence of the alleged RICO violations, but as a much more attenuated consequence of the FTC enforcement action in the district court, the ensuing chapter 11 proceeding, and the independent decision of the special counsel to terminate Willis' employment notwithstanding the continued operation of Standard's rare coin business under the auspices of chapter 11 and the supervision of the special counsel. Willis' loss of employment represents a far more remote consequence of the RICO predicate acts than were the employee dismissals in *Pujol* and *Nodine*. Thus, although in a sense an attenuated effect of the alleged predicate acts, Willis' loss of employment plainly was "incidental to the corporation's injury." *Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542, 544–545 (6th Cir.1985) (sole owner of corporation who lost employment when corporation was forced into bankruptcy by RICO violations cannot recover for loss of employment).[2]

An extension of RICO standing in these circumstances would serve to "federalize" a substantial volume of common law fraud litigation traditionally left to state courts. Moreover, while we recognize that "RICO is to be liberally construed," *Sedima*, 473 U.S. at 498, 105 S.Ct. at 3286, "[a]llowing every ... employee ... a cause of action for injuries derivative of those suffered directly by a corporation does not just permit a vast amount of litigation to be brought in federal court that previously could only have been brought in state court, but creates a potential avalanche of suits that previously could not have been brought *at all.*" *Warren*, 759 F.2d at 545 (emphasis in original). According RICO standing to discharged employees in these circumstances merely by reason of their corporate employer's inability to survive the effects of a RICO violation would pose a serious risk that potential RICO liability be extended beyond any principled boundary based in "justice or policy." *Sperber*, 849 F.2d at 63 (limiting, on proximate cause grounds, broad-ranging RICO liability claim).

■ Willis' RICO damage claims for loss of reputation and for legal expenses are less sweeping in scope and somewhat more personal to Willis. In the circumstances of the present case we nonetheless believe these considerations insufficient to confer individual standing under RICO, for the alleged injuries were occasioned Willis in his capacities as "officer, director, stockholder and incorporator" of Standard and, likewise, are derivative in nature. Moreover, like the claim for loss of employment, these alleged injuries bear too attenuated a causal connection to the alleged RICO violations.

First, the complaint makes clear that all primary and immediate RICO-related injuries were sustained by Standard and its customers.[3] As "[a] RICO action to recover for injury to the corporation 'is a corporate asset,'" *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 30 (1st Cir.1987) (quoting *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986)), any treble damage recoveries by officers and stockholders for injuries incidental to the more immediate injury to the corporation would seriously "impair[ ] the rights of prior claimants to such assets," *id.*, including the rights of the injured cor-

2. We would allow that the allegations of the complaint suggest that, but for the asserted RICO violations, Standard would not have been placed in reorganization proceedings. In the present circumstances we cannot agree, however, that the alleged RICO violations effectively caused Willis' loss of employment with Standard. The independent decision of the special counsel to dismiss Willis must be considered an efficient intervening cause.

3. According to the facts alleged in the complaint, various defendants "began to purchase coins on Standard's behalf," to "illegal[ly] take from Standard," and "to sell over graded and over priced coins to Standard." Willis also alleges that the "conspirators knew that Standard had been cheating the consumers." He likewise alleges, conclusorily, that the "purpose" of the conspiracy was to "defraud[ ] Standard and Willis and their customers to whom the overgraded coins would be sold at inflated prices."

poration's defrauded customer-creditors. Although Standard, through the special counsel, has released all defendants who are alleged to have harmed Willis individually, there is no indication that the FTC does not yet retain the statutory authority to seek restitution on behalf of Standard's defrauded customers from defendants not previously the subject of the FTC's enforcement action in 1987.[4] To extend a corporate insider standing to assert individual RICO treble damage claims in these circumstances would seriously impede the efficient pursuit of available governmental and corporate recovery efforts to the potential detriment of the injured corporation's creditors. *See* 12B W. Fletcher, *Cyclopedia of the Law of Corporations,* § 5910, at 418 (rev. perm. ed. 1984) (one "reason underlying the general rule requiring the action to be brought by the corporation, even when the stockholder dominates the corporation ... [is] that the damages so recovered may be available for the payment of the corporation's creditors").

We likewise reject Willis' contention that these RICO defendants are afforded unfair protection by the corporate veil he elected to place between himself and Standard.[5] "Having chosen to conduct his financial affairs through the use of the corporate vehicle, with all of the benefits traditionally conferred by that device, [Willis] cannot simply shrug off the corporate mantle at the courthouse steps and demand recovery of all his losses as a private individual." *McDonald v. Bennett,* 674 F.2d 1080, 1086 (5th Cir.1982). Nor does the fact that Willis was the majority stockholder in a closely-held corporation alter the analysis to his advantage. "Whatever their identity in interest, [Willis and Standard] remained separate legal entities." *Id.*

"[T]he doctrine of proximate cause reflects social policy decisions based on shared principles of justice." *Sperber,* 849 F.2d at 65. "Regardless of the identity of financial interests between corporation and stockholder, [a sole or majority owner of stock] cannot employ the corporate form to his advantage in the business world and then choose to ignore its separate entity when he gets to the courthouse." *Fletcher,* § 5910, at 418. In these circumstances and absent an allegation that Willis was fraudulently induced to incorporate, we cannot think that Standard's incorporator, majority stockholder and chief executive possessed individual standing to assert RICO claims for damages derivative of the direct injury sustained by Standard.

*Affirmed.*

---

**4.** Pursuant to 15 U.S.C. § 53(b), the FTC is authorized to seek temporary or permanent injunctive relief for past or threatened unfair practices. Although the language of section 53(b) appears to limit the available remedy to injunctive relief, courts generally have interpreted section 53(b) to allow the FTC to invoke the full array of equitable remedies available to the district court, including divestiture of assets, appointment of a receiver, and restitutionary relief. *See, e.g., FTC v. United States Oil & Gas Corp.,* 748 F.2d 1431 (11th Cir.1984); *FTC v. Southwest Sunsites, Inc.,* 665 F.2d 711 (5th Cir.

1982). The future maintenance of such FTC enforcement actions presumably would be constrained only by the doctrine of laches.

**5.** Although the complaint alleges that the defendants conspired to induce Willis to accede to certain business arrangements, including the hiring of Taglione as chief numismatist, the complaint makes no allegation that the defendants in any way induced Willis to adopt the corporate form for conducting the coin business.