**Tali BENET–SOTO and All Plaintiffs Attached in the Appendix of the Present Complaint, Plaintiffs,**

v.

**The CHASE MANHATTAN BANK, N.A. and/or Housing Investment Corp. and/or Merrit and Harris Corp. and/or Manuel Jimenez and/or Dionisio Ramirez and Their Spouses to be Named Julia Doe and Sofia Doe and Their Respective Legal Society, Segovia Development Corp. and/or Otto Britto, Adriano Roges, Rosendo Fernandez and Their Respective Spouses to be Named Ana Doe, Jean Doe and Joan Doe and Their Legal Society and/or Construction Project Management and/or Pedro Piquer and His Spouse Maria Doe, and/or Agapito Font and Elizabeth Doe and Their Legal Society, Jose Rojas–Gonzalez and Nemi Doe and Their Legal Society, Pablo Simon–Felico and Tita Doe and Their Legal Society, Defendants.**

Civ. No. 90–2553CCC.

United States District Court, D. Puerto Rico.

May 12, 1992.

José M. Tous–Rodríguez, Hato Rey, P.R., for plaintiffs.

Roberto Corretjer–Piquer, Hato Rey, P.R., Agapito Font, Jay A. García–Gregory, San Juan, P.R., José A. Fuentes–Agostini, Luis F. Abreu–Elías, Hato Rey, P.R., Luis A. López–López, Rio Piedras, P.R., Ginoris Vizcarra-de–López–Lay, Santurce, P.R., and Reynaldo J. Salas–Soler, Rio Piedras, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

The case is before the Court on defendants The Chase Manhattan Bank, N.A., Housing Investment Corporation, Manuel Jiménez, his spouse Maria Luisa Suárez and their conjugal partnership's Motion to Dismiss and for Summary Judgment (docket entry 24), the brief in support thereof (docket entry 28), as well as plaintiffs' opposition (docket entry 36).[1]

The plaintiffs, natural persons who own apartment units at Condominio Segovia, filed a complaint alleging that the defendants conspired to devise an unlawful scheme to defraud, which they then implemented. They also allege that the defendants used the United States mail in furtherance thereof. The action has its origins in the following facts:[2]

On October 4, 1973, Housing Investment Corporation and Segovia Development contracted for interim financing for the development and construction of the Segovia Condominium. Under the terms of the agreement, the entire amount of the loan was not disbursed; rather, disbursement was made at various stages according to the progress made in the construction. As with all financing, it was contemplated that the proceeds from the sale of the Segovia apartments would be applied towards payment of the interim debt with Housing. Segovia was the developer and owner of the project. Maza Construction (Maza) was the contractor in charge.

The project's construction was to be carried out in stages of work completed, inspections, certification, and then payment for the same. This process of inspection, certification and payment by Housing was the customary cycle used in the industry.

---

1. Other co-defendants have also moved for dismissal. *See* docket entries 39 (Pablo Simon Felico, Sara Fortes de Simon and their conjugal partnership), 45 (Jose Rojas Gonzalez, Mercedes Ayala and their conjugal partnership), 46 (Segovia Development Corp.), 55 (Pedro Piquer, Marisol Merino de Piquer and their conjugal partnership), 66 (Adriano Roges Herrera, Irene Diaz and their conjugal partnership).

2. This summary is gleaned from a final partial summary judgment entered by the Superior Court of Puerto Rico, San Juan Part, in the case of *Ortiz–Ortiz, et al v. The Chase Manhattan Bank, N.A.*, CV 79–7994(806), a case which was litigated for over twelve years and which arose from the same facts of our case.

In August 1974, Construction Projects Management (CPM), the agent named by Segovia to supervise and coordinate the construction, discovered certain construction defects and informed Segovia. After Segovia and Maza reached an agreement as to the way of carrying out the repair work, they met with Housing in its offices in January 1975 to inform the financial institution of the agreements, and, in particular, to determine the manner in which payments for repairs would be made, for which Maza would be responsible.

Structural engineers Agapito Font and Otto Britto were contracted by Segovia to inspect, supervise, and qualitatively supervise the correction of the defects in the condominium. Upon concluding the repairs of the defects, Engineer Font certified that they had been properly made. The project was completed in 1977 at which time half the units had already been sold. Because of problems with repayment of the rest of the interim loan, Housing decided to accept as a substitute for the amount still due, the remaining unsold apartments. After the transfer, Chase was given the responsibility of selling those units.

The Superior Court of San Juan expressly found, based upon the admissible evidence, that neither Chase nor Housing acted or participated in any way in the repairs of the defects of the condominium. This Court further found that Chase's and Housing's participation in relation to the project was limited to that ordinarily carried out by financial entities, that they exercised the typical and traditional functions of generating interim financing for the construction of the project.

Having failed to prevail in twelve years of litigation arising from these facts, despite six amendments to their complaint and a seventh tendered, the apartment owners now allege the existence of a scheme whereby officers of defendant financial institutions agreed with the developers of Condominio Segovia to "cover" alleged structural defects and changed the plans approved by the Commonwealth government planning and regulatory agencies. The racketeering scheme consisted in accepting alleged certifications "as built" prepared by the developers in violation of public policy and applicable construction and planning regulations.

Plaintiffs contend that this scheme constitutes a pattern of racketeering activity within the meaning of the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. They claim damages in the sum of $20 million. Having reviewed the record before us, the Court finds that plaintiffs have failed to state a claim upon which relief can be granted under RICO which mandates the dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## STANDARD OF REVIEW

When a court faces a request for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), the factual averments contained in the complaint must be taken as true, indulging every reasonable inference helpful to plaintiffs' alleged cause of action. *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 37 (1st Cir.1991); *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 51 (1st Cir. 1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). Those averments which are merely conclusions are, however, exempted from any deferential treatment. *See Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987).

The First Circuit Court of Appeals recently set forth the general standard of review of Rule 12(b)(6) dismissals, making specific reference to civil RICO cases:

> For one thing, the complaint must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith; despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation. For another thing, in cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of prevent-

ing abusive or vexatious treatment of defendants. Civil RICO is an unusually potent weapon—the litigation is equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees. *See* 18 U.S.C. § 1964(c). For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering. Hence, to advert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.

*Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44 (1st Cir.1991) (citations omitted).

### THE COMPLAINT

This inarticulate and confusing complaint alleges violations of Section 1962(c) and (d) [3] that individual defendants Manuel Jiménez and Dionisio Ramírez from Housing, Otto Britto, Adriano Rogés, Rosendo Fernández from Segovia Development, and Pedro Piquer from Merrit and Harris Corp. "planned an unlawful scheme and racketeering activity *in order to defraud Chase and Housing* and future buyers and debtors who would buy their apartments at Condominio Segovia." (Paragraph 17 of the complaint; emphasis ours.) Housing and Chase, the institutions which financed the construction of Condominio Segovia, are initially characterized as *victims* of the individual defendants' fraudulent scheme only to be later portrayed as participants

and beneficiaries of the schemes. *See e.g.* ¶ 19, 24 and 31 of the complaint. The fraudulent scheme allegedly consisted of an agreement between the above-mentioned individual defendants "to cover the structural defects, changing the plans filed with the planning board, violating the building code of Puerto Rico and the permissions originally granted by the Planning Board. And in this way defrauding all future buyers of the apartments at Condominio Segovia." [4]

The racketeering activity was described by the plaintiffs as the acceptance by the individual defendants of

a certification "as built" by developers at the end of the construction, against public policy, bank's bylaws, and interim loan which states that same building would be constructed according to Planning Board's regulations and construction code. This in violation of regulations and against the construction and building code in Puerto Rico. Accordingly the changes in the plans of the building were made without the permission of the Planning Board and/or Administración de Reglamentos y Permisos (ARPE).[5]

The gravamen of plaintiffs' cause of action turns on these allegations, adding that, in furtherance of the alleged fraudulent and racketeering activities, the defendants used the United States mail in violation of 18 U.S.C. § 1341. *See* ¶ 33 of the complaint. Paragraphs 34 and 35 allege violations to title 18 U.S.C. § 1344—bank fraud. The rest of the complaint mentions a racketeering scheme, a pattern of racketeering activity and a series of predicate acts which are vaguely described. (*See e.g.* ¶ 17, 19, 23, 24, 31, 32, 33, 34 and 35 of the complaint.)

---

**3.** 18 U.S.C. § 1962(c) and (d) read:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**4.** *See* ¶ 18 of the complaint.

**5.** *See* ¶ 20 of the complaint. The acronym ARPE stands for the Regulations and Permits Administration.

We note, moreover, that there are no allegations of activities by any of the corporate defendants. They appear merely as the employers of the individual defendants, and it is stated that they "benefitted" from the racketeering activities.

Even under a liberal interpretation and considering all favorable inferences to plaintiffs which may be derived from the factual allegations of the complaint, the same fails to meet basic pleading standards under RICO.

## THE CLAIM FOR RELIEF UNDER RICO

To avoid dismissal the complaint had to state facts sufficient to portray specific instances of racketeering activity within the ambit of RICO and a causal nexus between that activity and the harm alleged.[6] In other words, since the complaint is brought under 18 U.S.C. § 1962(c), it requires proof of (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Miranda v. Ponce Federal Bank,* 948 F.2d 41 (1st Cir.1991); *Feinstein v. Resolution Trust Corporation,* 942 F.2d (1st Cir.1991); *United States v. Angiuo,* 847 F.2d 956, 964 (1st Cir.1988).

█ To succeed on the claim plaintiff must plead and prove that the defendants' scheme amounted to or posed a threat of continued criminal activity. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238–39, 109 S.Ct. 2893, 2899–2901, 106 L.Ed.2d 195 (1989); *Feinstein,* 942 F.2d at

44. They must also show that their injuries arise not because of violations of law, public policy, or tortious acts, but that they were proximately caused by and resulted from RICO predicates. *Miranda, supra,* at 44.

## THE PREDICATE ACTS

█ The most basic requirement for sustaining a RICO action is establishing defendants' involvement in the racketeering acts. The predicate acts identified by RICO are those indictable acts under certain specified criminal laws. *See* 18 U.S.C. § 1961(1)(B). Under the heading of violation of Racketeering Influenced and Corruption Organization Act in their complaint, plaintiffs identify the violations of law which the "predicate acts" supposed constitute. In ¶ 33 they state that individual defendants on two or more occasions used the United States mails and "other instrumentalities of interstate commerce"[7] in violation of 18 U.S.C. § 1341 "in order to send information between defendants ... concerning some scheme and racketeering practice as well as sending to plaintiffs concerning their loans and purchase information." It is asserted in ¶ 34 that the actions constituted a bank fraud scheme in violation of 18 U.S.C. § 1344[8] in that individual defendants presented a "certification of the building 'as built' for the banking purpose in order to give all permanent loans through a pattern of racketeering activity...." Paragraph 35 also alleges bank fraud in that individual defendants accepted false certifications which resulted in dispersal of the interim loan payments.

Whether plaintiffs succeed in setting forth each defendant's alleged involvement

---

**6.** The Court of Appeals for the First Circuit has indicated that more detailed statements of claim are required in racketeering, fraud and civil rights cases. *See Garita Hotel Ltd. Partnership, Inc. v. Ponce Federal Bank FSB, et al,* 958 F.2d 15, 17 n. 1 (1st Cir.1992).

**7.** Although plaintiffs attempt to plead 18 U.S.C. § 1341 violations as including other means of communications, which is what we think they mean, in fact, it does not. Wire fraud, which plaintiffs probably meant to plead, is a violation of 18 U.S.C. § 1343.

**8.** 18 U.S.C. § 1344 reads as follows:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

in the racketeering acts depends on the sufficiency of allegations. *See Feinstein,* 942 F.2d at 42. Paragraph 17 establishes January 14, 1975 as the date on which "the individuals mentioned planned a scheme and racketeering activity in order to defraud Chase and Housing." With regard to the bank fraud acts the complaint fails to describe acts by which the defendant financial institutions were defrauded and injured. *See United States v. Blackmon,* 839 F.2d 900, 905–906 (2nd Cir.1988). To the contrary, the complaint emphasizes the illegal benefits that the defendants *the financial institutions,* enjoyed on account of the individuals' alleged fraudulent acts.

Paragraph 31 identifies the "acts as set forth above" as being "predicate." Actions alleged in the first thirty paragraphs include covering structural defects, changing plans filed with the planning board, violating Puerto Rico's building code and permits issued by the Planning Board, changing the building plans without the Planning Board or ARPE's permission, and similar complaints which allegedly resulted from construction defects.

■ The pleading requirements of Fed. R.Civ.P. 9(b), on particularity in pleading fraud extend to pleading predicate acts of mail and wire fraud under RICO. *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 290 (1st Cir.1987). "As in any other fraud case, the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." *Feinstein,* 942 F.2d at 42; *Arzuaga–Collazo v. Oriental Federal Savings Bank,* 913 F.2d 5, 6–7 (1st Cir.1990), citing *Figueroa–Ruiz v. Alegría,* 896 F.2d 645, 648 n. 3 (1st Cir.1990).

A RICO claim that merely recites the statutory language under the guise of being a factual allegation, like the ones made in paragraph 33 through paragraph 35 of the complaint, does not satisfy pleading requirements. *See Feinstein,* 942 F.2d at 42–43. No factual circumstances surrounding the alleged fraudulent mailings or interstate communications are set forth in this complaint. It is not stated what role *each* defendant played in the fraudulent conduct. *See Wayne Inv. v. Gulf Oil Corp.,* 739 F.2d 11, 13–14 (1st Cir.1984). That is, not a single incident mailing is identified, nor a conversation between specific parties is set out in the complaint.

The Court is mindful of the advice in *Becher* that district courts permit discovery in order that plaintiffs may amend their complaint in compliance with Rule 9(b); *Becher,* 829 F.2d at 292. The circumstances of this case are distinguishable, however. Plaintiffs did not request any discovery, although they were well apprised of the fact that one of the grounds for dismissal was their failure to comply with the fraud pleading requirements of Fed.R.Civ.P. 9(b). Furthermore, it is undisputed that the condominium owners and the banking defendants were involved in litigation concerning this same matter in the Commonwealth courts since 1979. Plaintiffs have had ample opportunities for discovery, which is demonstrated by their submissions in opposition to the motion for summary judgment on grounds of *res judicata* filed by defendants. Also, that plaintiffs have made extensive discovery is demonstrated in their Reply to Motion for Brief in Support of Motion to Dismiss and/or Summary Judgment from Agapito Font at paragraph 9 in which they make a statement to this effect.

Moreover, plaintiffs invite the court to order *defendants* to provide copies of all mailings which they sent to the plaintiffs, documents which were obviously received by the plaintiffs, and which *they* should have identified in the complaint and could have provided to the court in support of their opposition to dismiss.[9]

---

9. Nevertheless, if the Honorable Court does not understand that the complaint has all the elements to imply a violation under the RICO Act, and if defendants insist as to there is no sufficient allegations to imply the necessary elements, an Order against defendant should be entered to supply and submit all information sent to plaintiffs through the U.S. mail, since according to the minutes as Exhibit III, the unlawful scheme commenced in January 14, 1975.

There is no justification for their failure to comply with Fed.R.Civ.P. 9(b). As stated in *Feinstein, supra,* "there is no sound reason to overlook the usual rules of pleading and practice and relieve the [plaintiffs] from their seemingly deliberate choice to stand or fall upon their complaint as pleaded."

## THE PATTERN OF RACKETEERING ACTIVITY AND THREAT OF CONTINUED CRIMINAL ACTIVITY

■ The complaint also fails to properly plead the required pattern of racketeering activity. Continuity and relatedness of the predicate acts are the criteria for determining whether the racketeering pattern element is established. *See Sedima, S.P.R.L.,* 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14; *H.J., Inc.,* 492 U.S. at 239–240, 109 S.Ct. at 2900–01. Other than plaintiffs' conclusory statements and repeated use of the statutory phrase, there are no factual allegations, nor can the Court infer, that the acts of racketeering activity in any way constitute, or pose the threat of continued criminal activity.

The acts alleged by plaintiffs refer to a single occurrence: the failure to construct Condominio Segovia following original plans and specifications, and, instead accepting "as built" certifications or plans contrary to Commonwealth regulations and building codes. Inasmuch as the building was completed in 1977, the scheme was completed when the "as built" certifications or plans were accepted and/or used, it cannot be said that it extended over a substantial period of time or posed a threat of continued criminal conduct. There is no allegation that the defendants continued to construct in violation of Commonwealth laws and regulations.

Moreover, the plaintiffs failed to allege any facts from which the Court can reasonably infer that the requisite element of continuity has been met. Apart from the allegations related to the events that took place in 1975, the complaint is a litany of vague allegations concerning other acts or cover-up of structural defects or illegal submission of plans to government agencies.[10] It is not alleged that the conduct complained of, the predicate acts, extended through a substantial period of time or is likely to continue in the future. *H.J., Inc.,* 492 U.S. at 242–243, 109 S.Ct. at 2902–03; *Feinstein,* 942 F.2d at 44–46.

Plaintiffs attempted to remedy this by alleging that the scheme continues to injure their property since condominium units continue to be sold and financed by defendant Chase. These sale transactions purportedly demonstrate the existence of the pattern of racketeering activity which constitutes a continued scheme of multiple predicate acts. There is no allegation nor reasonable inference that can be made that the sale and financing of condominium units of Condominio Segovia are in themselves racketeering acts within the meaning and ambit of RICO. Even taking the allegations of fraud as true and sufficient, they are not susceptible of being transformed into the "pattern of racketeering activity" that Congress was concerned with when enacting RICO. *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 31 (1st Cir. 1987).

## THE ENTERPRISE ELEMENT

■ The plaintiffs failed to identify any entity within the meaning of 18 U.S.C. § 1961(4) as the RICO "enterprise."[11] The

---

Defendants' Reply to Motion for Summary Judgment (docket entry 36). These are documents which should have been examined by the attorney in order to determine if plaintiffs have a cause of action under RICO for violation of 18 U.S.C. § 1341. Failure of the attorney to review such documents could be a violation of his duty. F.R.Civ.P. 11.

**10.** Only detail is provided as to the nature of the specific construction defects.

**11.** The words "enterprise" or "association infact" do not even appear in the complaint. Plaintiffs' only discussion of an "enterprise" is found in their Reply to Motion for Summary Judgment (docket entry 36), at p. 20:

Defendant [sic] have alleged the conduct of an enterprise through a pattern of racketeering activity. It has alleged all the elements of the enterprise, through a holding company, Housing and Chase plus all the other companies and the employees, managers and engineers

complaint dwells on concepts of conspiracy and racketeering activity, as if this could fulfill the enterprise element. The RICO "enterprise," however, is not to be equated with the conspiracy to commit racketeering acts; the enterprise must involve more than an agreement to engage in a pattern of racketeering activities. *Hartz v. Friedman,* 919 F.2d 469, 471 (7th Cir.1990).

An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has stated that an enterprise is an "ongoing organization" and that "the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). The fact that certain officers and employees of defendant financial entities, developers and consultants are included in the complaint does not help to establish the existence of this element, as RICO does not impose liability on an enterprise by a theory of *respondeat superior. Miranda,* 948 F.2d at 44–45; *Arzuaga–Collazo,* 913 F.2d at 6–7; *Odishelidze v. Aetna Life & Casualty Co.,* 853 F.2d 21, 23 (1st Cir.1988); *Schofield v. First Commodity Corp.,* 793 F.2d 28, 29–34 (1st Cir.1986).

### PROXIMATE CAUSE BETWEEN RACKETEERING PREDICATE ACTS AND INJURY

 Plaintiffs alleged cause of action under RICO faces another obstacle. In order to prevail under 18 U.S.C. § 1962(c), plaintiffs must establish a causal relationship between the racketeering predicates and their alleged injury. "Proximate cause is thus required." *Holmes v. Securities Investor Protection Corporation,* —— U.S. ——, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Miranda,* 948 F.2d at 46–47; *Willis v. Lipton,* 947 F.2d 998, 1000 (1st Cir.1991).

Inasmuch as the injury complained of—the defects of the condominium units owned by the plaintiffs [12]—cannot be said to be the product of the alleged fraud, such injury cannot have occurred "by reason of" a RICO violation. The racketeering predicates include of mail fraud based upon unidentified acts of mailing materials related to the loans and purchase of apartments, and the two modalities bank fraud resulting from the false construction certifications resulting in disbursement of payments and loans by financial institutions.

No allegation is made of how any injury arose from the mailings, nor is there any allegation of any injury to the plaintiffs by the financial institutions' disbursement of money based upon fraudulent certifications.[13] The injury described in the complaint appears to be resulting from certain construction defects and not from issuance of improper certification or lack of government permits, which was allegedly the result of the fraudulent conduct perpetrated by the defendants.

The allegations of injury merely indicate that the true nature of their protestations against defendants is one which should normally be entertained by state courts absent complete diversity of citizenship between the litigants. *See Arzuaga–Collazo v. Oriental Federal Savings Bank,* 913 F.2d 5 (1st Cir.1990).

### CONCLUSION

After carefully reviewing the pleadings in this case, the Court finds that plaintiffs

---

contracted by them. All with full knowledge of the scheme.
*See also:* Plaintiffs' Opposition to Reply Memorandum (docket entry 61) for more conclusions unsupported by facts or analysis.

**12.** Although plaintiffs contend that the building is a "ruin" they do not allege that it has been condemned as such, that it is uninhabitable or that they are unable to live in their apartments. Thus, the actual nature of the injury is unclear.

**13.** Inasmuch as Chase and Housing are alleged victims of the scheme to defraud, we seriously doubt that plaintiffs have standing to sue under Section 1344, if they cannot show that they were injured by the payments. *See Bennett v. Centerpoint Bank,* 761 F.Supp. 908 (D.N.H.), aff'd. 953 F.2d 634 (1st Cir.1991). *Compare Wiener v. Napoli,* 772 F.Supp. 109 (E.D.N.Y.1991) (bank fraud was sufficiently pleaded where defendants acquisition of funds from the bank through fraudulently endorsed checks, thereby deviating fees and disbursement due to plaintiff's estate).

have failed to meet basic pleading requirements for maintaining a RICO action in this forum. The attempt to turn the claims of faulty construction into a civil RICO action more than thirteen years after completion of the building and their failure to prevail in Commonwealth courts despite six amendments to the complaint smacks of misuse of the RICO statute to harass defendants all of whose involvement, except Chase's, with the project had ended at that time.

Given the complexities and great expense of litigating civil RICO claims defendants are hereby awarded attorney's fees, as well as costs, to which they are entitled. Attorney José M. Tous–Rodríguez, who has represented the condominium owners in both the Commonwealth and federal litigation, bears all or part of the responsibility for his clients' pursuit of the matter into federal court.[14] Accordingly, he is GRANTED eleven (11) *calendar* days after notice to show cause why he should not be jointly, if not solely responsible for payment of attorney's fees, pursuant to Fed.R.Civ.P. 11.

SO ORDERED.

### JUDGMENT

For the reasons stated in the Opinion and Order issued on this same date, the complaint is hereby DISMISSED for failure to state a claim.

SO ORDERED AND ADJUDGED.

---

**14.** A copy of a letter dated January 14, 1991 from the attorneys to Mr. Luis Hernández, President of the Board of the condominium, submitted by Chase and Housing in support of their Motion to Dismiss and for Summary Judgment (docket entry 28), (*see* Exhibit A to Declaration of Samuel Pastrana) which was not disputed by counsel indicates that this suit may have been filed without the consent, knowledge or support of the apartment owners/individuals identified in the caption.